ELIZA KEMPNER v. C. E. HUDDLESTON.

Decided November 23, 1896.

1. Res Judicata—Second Appeal.

A former decision of the Appellate Court in the same case constitutes no bar to a further consideration of the same question upon a second appeal. (Pp. 184, 185.)

2. Estoppel—Entrusting Apparent Title to Another.

When the owner of property holds out another or allows him to appear as having full power of disposition of property in his actual possession, innocent third parties thus led into dealing with such apparent owner will be protected. This principle applied to the indorsement and delivery of an overdue note, Walker v. Wilson, 79 Texas, 185, distinguished from this case, and rulings in Huddleston v. Kempner, 3 Texas Civ. App., 252, modified. (P. 185.)

3. Same—Transfer of Note—Feme Sole—Married Woman.

A single woman, payee of a promissory note, delivered it for safe-keeping to one whom she afterwards married. It was delivered by the husband—bearing then an indorsement transferring it to him, to which was signed the name of the payee,—to one who took it, in ignorance of any invalidity in the indorsement, as collateral security for money loaned the husband. In a suit by the wife to enjoin the collection by such assignee of a judgment recovered by him upon the note, and to have it enforced for her own benefit,—she claiming not to have signed the indorsement to her husband. Held:

(1.) If she executed the transfer and delivered possession of the note before her marriage, though only for collection, she was estopped from recovering from those who acted upon this appearance of title in her assignee. (Pp. 185, 186.)

(2.) If, however, she delivered the note, without indorsement, for collection, to her future husband, and he signed her name to the written indorsement and before marriage informed her of that fact, her act in permitting him to retain possession of the note so indorsed would estop her from denying the title of one who acquired it, though after maturity, for a valuable consideration, and without notice of the want of title in said indorsee. (P. 186.)

(3.) If the husband, having possession of such note, wrote the endorsement and signed the payee's name thereto, whether before or after marriage, but only after marriage informed his wife of the fact, she would not be estopped to dispute the title of an assignee to whom the husband delivered the note with such indorsement. The husband had by law the right to manage and control the note and have possession of it and the wife having no right to the possession was guilty of no wrong in leaving it in his hands. (Pp. 186, 187.)

QUESTIONS CERTIFIED from Court of Civil Appeals, First District, on writ of error to Anderson County.

The questions certified are shown in the opinion.

*Gregg & Gardner,* for plaintiff in error Kempner.—The notes having matured, they were as other personal property, and if the payee executed the transfers endorsed on the notes, which transfers on their face vested the title in F. M. Huddleston for value received, then Kempner could rely on said transfers; and as the evidence showed that he was a bona fide purchaser, without notice of any secret understanding between the payee and Huddleston, the payee was estopped from setting up such secret understanding. The legal title passed to Kempner, and the payee having clothed Huddleston with the indicia of ownership she is estopped as against a bona fide transferee from Huddleston. Strange v. Railway, 53 Texas, 170; Davis v. Gray, 61 Texas, 507; Moore v. Moore, 112 Ind., 149; Hill v. Shields, 81 N. C., 253; Bradford v. Williams, 91 N. C., 9; McNeil v. Bank, 46 N. Y., 325; 7 Am. Rep., 341.

*Thos. B. Greenwood & Son,* for defendant in error Huddleston.— Kempner, having received the Singletary notes from F. M. Huddleston, as collateral security for his debts, after their maturity, acquired only such title as F. M. Huddleston had and no better; hence he took these past due and dishonored notes, subject to the superior and prior equities of Mrs. Huddleston and her children. As Mrs. Huddleston never parted with her title to nor received anything for the notes, Kempner could acquire no title thereto as against her, though she had consented to an endorsement remaining thereon for purposes of collection only. Huddleston v. Kempner, 3 Texas Civ. App., 252; Walker v. Wilson, 79 Texas, 187; Weathered v. Smith, 9 Texas, 623; Foley v. Smith, 6 Wall., 493; Bank v. Turnley, 61 Texas, 370; Kempner v. Comer, 73 Texas, 196.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals, for the First Supreme Judicial District, has certified to this court the following statement and questions:

"The above entitled cause is before this court on writ of error from the

County of Anderson. I. N. Singletary executed two promissory notes to C. E. Singletary, a feme sole, for the purchase money of land; each note is dated November 16, 1885, and payable twelve and twenty-four months after date respectively, to C. E. Singletary or order. Some time in December, 1887, these notes were delivered by the payee to F. M. Huddleston, for safe keeping as she testified. Afterwards she and Huddleston were married. On February 1, 1889, Huddleston endorsed and delivered the notes to H. Kempner as collateral security for money advanced to Huddleston in cash. At the time of the endorsement of the notes to Kempner each had written thereon the following transfer: 'For value received I hereby transfer the within note to F. M. Huddleston, December 15, 1887. (Signed) C. E. Singletary.' Mrs. Huddleston testified that she did not sign the transfers; that after their marriage Huddleston told her that during a recent illness of herself he had transferred the notes to himself to enable him to collect them for her children in case of her death, and that afterwards he held possession of them for collection for herself and her children. On the other hand there was evidence tending to show that the signatures to the transfers were in the handwriting of plaintiff. Kempner took the notes without notice of any rights of Mrs. Huddleston thereto, relying on the transfers. He afterwards brought suit against the maker of the notes and obtained judgment thereon with foreclosure of the vendor's lien. This suit was brought by Mrs. Huddleston to enjoin the collection of the judgment by Kempner and to have it enforced for her own benefit.

"This is the second appeal of the case. The first appeal, which is reported in 3 Texas Civ. App., 252, was decided on the authority of Walker v. Wilson, 79 Texas, 185, but as in the latter case the note did not have a transfer endorsed thereon, it is deemed proper to certify the following questions for the decision of the Supreme Court:

"1. Is the decision of this court on the first appeal in this case conclusive of the question then decided and now again presented for decision? What is the effect of the first decision of the question upon the same question on the second appeal?

"2. If the plaintiff signed the transfers endorsed on the notes and delivered them to Huddleston for collection only, or if after the delivery of them to Huddleston for safe keeping he wrote and signed the transfers himself and afterwards told her of it, and she permitted him to retain the notes for the purpose of collection only, would she be estopped to dispute the title of Kempner and set up her right to the proceeds of the notes?

"3. If Mrs. Huddleston did not write or execute the transfers before her marriage to Huddleston, but was informed of it by him afterwards and permitted him to retain them for collection only, would the fact that she was the wife of Huddleston at the time affect the question of estoppel?"

To the first question propounded, we answer that the former decision

of the court in this case constitutes no bar to the further consideration of the same question upon a second appeal. Burns v. Ledbetter, 56 Texas, 282; Railway v. Faber, 77 Texas, 153; Bomar v. Parker, 68 Texas, 435.

In Railway v. Faber, cited above, the court said: "Upon a second or other subsequent appeal this court adheres to its former rulings unless clearly erroneous."

The question as to whether the court will reconsider, upon a second appeal, what it has formerly decided in the same case, must always be addressed to the discretion of the court and determined according to the particular circumstances of that case.

The second and third questions propounded by the Court of Civil Appeals really embrace three questions, which, for convenience of answering, we will divide and state as follows:

1st. If Mrs. Huddleston, before her marriage with her present husband, and while she was a feme sole, executed the transfer written upon the back of the notes, and delivered them to F. M. Huddleston to be by him collected for her, then did the transfer of the notes by Huddleston to Kempner vest title in the latter?

2d. If F. M. Huddleston, before his marriage with C. E. Singletery, received the notes from Mrs. Singletery for collection, and without her consent endorsed upon them the transfer to himself, and afterwards, before their marriage, informed her of the fact, and she then permitted him to retain possession of the notes so transferred, did the transfer by Huddleston to Kempner pass the title of the notes to the latter?

3d. If the notes were by Mrs. C. E. Singletery placed in the hands of F. M. Huddleston for collection before their marriage, and he—either before or after marriage—without her consent, wrote the transfer upon the notes and signed her name thereto, and after the marriage informed her that he had made such transfer and signed her name to it, is she estopped to recover the notes from the assignee of her husband, F. M. Huddleston?

This case does not fall within the class of cases embraced in the decision of this court in Walker v. Wilson, 79 Texas, 185, and Weathered v. Smith, 9 Texas, 623, because the language used in the endorsement written upon the back of the notes is of a character which evidences ownership of the notes themselves in the person to whom they are transferred. The rule stated by Mr. Bigelow in his work on Estoppels, page 547, is—"that where the true owner of property holds out another or allows another to appear as the owner of or as having full power of disposition over the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected; or, where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who caused such action, the rights so acquired are secure, whether contested at law or in equity. Such rights do not depend upon the actual title or right or authority of the party with whom they

have directly dealt, but are derived from an act of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale." Moore v. Bank, 55 N. Y., 41; Armour v. Railway, 65 N. Y., 111; McNeill v. Bank, 46 N. Y., 325; Combes v. Chandler, 33 Ohio St., 178; Love v. Barber, 17 Texas, 312.

In Moore v. Bank, before cited, the plaintiff was the owner of a certificate of indebtedness of the state of New York, which he transferred by the following endorsement: "For value received, I hereby transfer, assign and set over to Isaac Miller the within described amount, say $10,-000. (Signed) Levi Moore." This assignment was procured by false representations, and as between Miller and Moore, the title did not pass, but Miller, for a valuable consideration, transferred the certificate to the defendant bank, which had no notice of the fraud between the prior parties. The court held that the use of the language embraced in the transfer of the certificate imported absolute ownership in Miller, and that the bank, being an innocent purchaser for value, was entitled to protection against the claim of Moore. The language used in the transfer of the notes from C. E. Singletery to F. M. Huddleston clearly indicates that for value paid the title is passed to Huddleston, and if Mrs. Singletery signed this when she was a feme sole she is estopped to recover as against Kempner or his legal representatives who acted upon the appearance of title in Huddleston as shown by the endorsement.

If Huddleston, before his marriage with Mrs. Singletery, received the notes from her for collection and without her consent wrote the endorsement upon them by which they were transferred to him, and signed her name thereto and afterwards, before the marriage, informed her that he had made such transfer to himself and signed her name to it, and being so informed she permitted him to retain possession of the notes. with the transfers written thereon, then she would be estopped from denying the title of Kempner, who purchased in good faith for a valuable consideration and without notice of any want of title in Huddleston. By leaving the notes in his possession with the endorsement written and her name signed thereto, she ratified the act of Huddleston and made it as binding upon her as if she had actually signed it herself.

If, however, the notes were in the hands of Huddleston, before his marriage, as the agent of Mrs. Singletery, and he wrote the endorsement upon the notes and signed her name thereto without her consent—whether this writing was done before or after the marriage—and after the marriage informed her that he had written the transfer of the notes. to himself and signed her name thereto, she would not be estopped to dispute the title of Kempner or his legal representatives. Before their marriage the possesion of F. M. Huddleston was the possession of Mrs. Singletery, which she could at any time terminate, and if she, knowing the facts, permitted him to retain possession of the notes so endorsed in her name as to appear to be his property, she would be estopped to deny.

the title of one who purchased them for value without notice of her right, because she thereby enabled him to perpetrate the wrong. After the marriage Huddleston had by law the sole right to manage and control the notes, which necessarily included the right to have them in possession. (Rev. Stats., art. 2967; Burleson v. Burleson, 28 Texas, 417; Clay v. Power, 24 Texas, 304.) Having no right to the possession of the notes after marriage, Mrs. Huddleston was not negligent nor guilty of wrong in leaving them in the lawful possession of her husband.