## FIRST STATE BANK OF AGUA DULCE v. FIRST NAT. BANK OF ROBSTOWN. (No. 7539.)

(Court of Civil Appeals of Texas. San Antonio. March 31, 1926. Rehearing Denied April 28, 1926.)

**1. Appeal and error ⬅═━907(3).**

Where transcript contains no statement of facts, facts found by trial judge must be conclusions of fact of Court of Civil Appeals.

**2. Estoppel ⬅═━75—Bank having loaned bills of lading to former customer for use in fraudulently procuring loan from another bank, and actively assisted in procuring such loan by representing customer to be reliable, held estopped from setting up superior claim to cotton represented by bills of lading as against right of bank to whom they were subsequently pledged.**

Where bank loaned to one of its former customers, bills of lading held by it as security, to be used by customer in fraudulently obtaining credit in another bank, and also actively assisted in his perpetrating fraud by advising officers of other bank that he was reliable and honest, *held* that bank lost all claim on bills of lading as between it and the other bank to whom customer had pledged them, and was estopped to set up superior right to cotton represented thereby.

**3. Estoppel ⬅═━75—Innocent third parties led into dealing with apparent owner will be protected, where true owner of property permitted such apparent owner to appear as actual owner.**

Where true owner of property holds out another, or, with knowledge of his own right, allows another to appear as owner, and innocent third parties are thus led into dealing with such apparent owner, they will be protected.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by the First National Bank of Robstown against the First State Bank of Agua Dulce and others. Judgment for plaintiff, and defendant Bank appeals. Affirmed.

Kleberg & North, of Corpus Christi, and H. W. Wallace, of Cuero, for appellant.

Boone & Savage, of Corpus Christi, for appellee.

FLY, C. J. The pleadings in this case, together with several short orders, cover 219 pages of a transcript containing 292 pages. Pleadings supplanted by amendments have been copied, which merely tend to cumber the record and increase the labor of this court. We have ascertained from the second amended original petition that this suit was prosecuted by appellee against the First State Bank of Agua Dulce, E. L. Burks, H. C. Burks, H. C. Burks Cotton Company, Agua Dulce Mercantile Company, Den Newell and John W. Kellam, Anderson Clayton Company, San Antonio Compress Company, J. U. Shepperd Gin Company, Aransas Compress Company, St. Louis, Brownsville & Mexico Railway Company, and Texas-Mexican Railway Company, to establish its right to certain cotton and to obtain the proceeds arising from the sale thereof. The cause was tried without a jury and a 10-page judgment was rendered in favor of appellee.

[1] There is no statement of facts, and consequently the facts found by the trial judge must be the conclusions of fact of this court. The findings of facts cover 45 pages of the transcript, and of course are too bulky to be copied into this opinion. Appellant does not assail any of the findings of fact, but assails the conclusions of law of the trial judge in 11 out of 13 assignments of error. The twelfth assignment of error claims that the court erred in rendering judgment against appellant on its cross-action for the proceeds of 196 bales, and the thirteenth assignment complains of a failure to render judgment in its favor for the proceeds of 166 bales of cotton. We select from the findings of facts matters necessary to a proper decision of this case.

E. L. Burks lived in Agua Dulce, and went by the name of H. C. Burks, and for 17 years had been an intimate acquaintance of Dale Walker, who at the time of this transaction

was, and ever since its organization had been, president of the appellant bank at Agua Dulce, and knew that the real name of said Burks was E. L. instead of H. C. Burks. The man having the last-named initials was a son of E. L. Burks, and lived in Concho county. For several months prior to August 26, 1924, E. L. and H. C. Burks were engaged in the mercantile and cotton buying and selling business at Agua Dulce under the name of the Agua Dulce Mercantile Company, using various names in such cotton business. They also owned a gin and gasoline station and ice business, as well as an 80-acre farm, dwelling houses, and storehouse. E. L. Burks was the active manager of all the various business enterprises, and bought cotton in Nueces and other counties; his shipping points being Sinton, Robstown, and Aransas Pass, and other points where compresses were situated. For several months prior to August 19, 1924, E. L. Burks and H. C. Burks, under their various and pseudonymous names were customers of appellant bank at Agua Dulce, and the latter, up to August 19, 1924, had been lending and advancing money to them to run their cotton business. The bank had a contract with the Burkses, under the name of H. C. Burks, which purported to give the bank a lien on all cotton purchased by them, and agreed to deliver the same to a cotton yard, compress, warehouse, mill, or railroad company and deliver the bill of lading to the bank. The instrument was never deposited for registry and never recorded, but was held by the bank. Under the agreement money was advanced to Burks, and he trusted them to apply the proceeds of cotton on the accounts. Finally Burks was indebted to the defendant bank on the cotton account in the sum of $37,262.89. Some of the stockholders insisted that the president, Dale Walker, require Burks to pay off his debt and get rid of his account. Prior to August 18, 1924, Burks had purchased and sent to Robstown 10 bales of cotton, and had received a bill of lading from the Texas-Mexican Railway, and at that time the cotton was on the platform. Burks, prior to the date named, shipped 156 bales of cotton to Galveston, and had a bill of lading from San Antonio & Aransas Pass Railway Company, at Alice. The appellant had advanced the money to pay for the 156 bales of cotton described, and that money constituted part of the indebtedness to the bank. On August 19, 1924, Burks had shipped 37 bales of cotton to Galveston, and had received a bill of lading from the Texas-Mexican Railway Company.

On August 18, 1924, Dale Walker notified E. L. Burks that the bank could not longer handle his account and would not further finance him. Walker suggested that Burks get appellee to finance him. J. W. Craddock, a representative of W. L. Moody Cotton Company, with Burks, called on L. L. Nusom,

president of appellee, and Burks was introduced by Craddock to Nusom. Nusom had not known Burks, and thought his name was H. C. Burks. Craddock told Nusom that Burks wanted a bank to finance his cotton business. Nusom had Burks to make a financial statement which showed his assets to be $115,000 and liabilities $16,120. Burks gave Dale Walker as a reference. The matter was submitted to the finance committee, which authorized Nusom to handle Burks' account if he could give sufficient security to make the account safe. Burks went to see Dale Walker and had him to call Nusom on the telephone. He told Nusom:

"That Burks was on his way down to see him to make arrangements with the First National Bank of Robstown to finance his cotton account; that he was a capable and reliable man, that everything was all right between Burks and the First State Bank of Agua Dulce, and his business with it had been entirely satisfactory; that Burks' account had been a profitable one; that he would rather lose any account he had in his bank than to lose the Burks' account, but that Burks' business was larger than his bank could handle; that because two of his directors were competitors of Burks they were making it very unpleasant for Burks and for him, and for these reasons it was necessary for Burks to make other arrangements; that Burks was absolutely reliable, well fixed financially, had a valuable lot of property at Agua Dulce; that Nusom could absolutely depend and rely upon anything that Burks did or said; and that he hoped Nusom would be able to accommodate Burks. During this conversation Nusom told Walker that if he decided to finance Burks he did not want any split accounts, and that if he decided to take on his account he would expect all of Burks' business, and he was then assured by Dale Walker that if he would accommodate Burks he would see that Nusom's bank got all of Burks' business, and his bank would not thereafter handle any of it.

"These statements so made by said Dale Walker as president and cashier of the First State Bank of Agua Dulce to L. L. Nusom, president of the First National Bank of Robstown, were voluntarily made, and were made in order to assist Burks in making other financial arrangements and to enable the First State Bank of Agua Dulce to get rid of Burks' account, and to carry out the instructions of said directors as to the same, and were made for the benefit of said defendant bank, and with the intent and purpose of influencing and inducing the First National Bank of Robstown to take on Burks' account and finance Burks on his cotton business, and were made and accepted by Nusom as statements of fact."

Shortly after the statements were made by Dale Walker, as president and cashier of appellant bank to Nusom, Burks went to Nusom's office, and, after learning the requirements of Nusom, presented to him the three bills of lading, one for the 156 bales of cotton, one for the 32 bales, and one for the 10 bales, and told Nusom the cotton had been paid for by Burks and no one had any claim on it. Nusom was not affected by the rep-

resentations of Burks, and did not rely upon the same standing alone, but relied upon the representations made by Dale Walker, president and cashier of appellant bank, for which he was acting at the time, and, upon those representations, furnished the money to Burks. The statements were not true, and were made in order to collect the amounts due by Burks to the Agua Dulce Bank. Nusom believed the representations made by Burks because Dale Walker had led him to believe whatever statements were made by Burks, and accepted the bills of lading on the 156 bales of cotton and on the 32 bales and 10 bales of cotton, and believed that appellant had no claim against Burks or the cotton represented by the bills of lading. Appellant knew the arrangement between Burks and appellee, and knew that appellee expected to be secured by the bills of lading to the cotton in dispute. The day on which Burks went to see appellee bank the assistant cashier of the appellant bank gave to said Burks the bills of lading for the 156 and 10 bales of cotton, not even asking what he intended to do with them, and Burks gave a receipt for them reciting "same to be held by me in trust only and to remain the property of said bank." Appellee had no notice whatever that appellant had any claim on the cotton when the bills of lading were presented to it as security by Burks.

The bills of lading to the 156 and 10 bales of cotton and to the additional 32 bales were delivered to appellee bank by Burks, and, after being indorsed, as agreed, by the bank were forwarded to a cotton firm in Galveston, and a letter accompanied them informing them that the cotton (198 bales) was the property of H. O. Burks Company, the proceeds subject to the order of appellee bank. A trust receipt was issued by the cotton company in favor of appellee, showing that said cotton was held in trust for appellee by such cotton company and subject to its order. The cotton was so held until it was sold and the proceeds placed to the credit of the appellee. On August 23, 1924, Dale Walker, without the knowledge or consent of appellee, obtained from E. L. Burks a draft on appellee in favor of said Bank of Agua Dulce for $37,-262.89, covering the entire indebtedness of Burks to the Agua Dulce Bank. That check was not presented to appellee for payment, and no effort was made to have same paid, but was held by appellant bank. On the same date the state bank examiner appeared at Agua Dulce, and Dale Walker informed him that his bank had cotton to cover the draft. The bank examiner said the cotton was not sufficient to cover the draft, and that Walker must get more from Burks. On August 24, 1924, being Sunday, Walker obtained, in lieu of the check for $37,262.89, a draft on W. L. Moody & Co., of Galveston, to whom the bills of lading had been sent by appellee for $20,570, being $110 a bale for 187

bales of cotton, and a draft for the balance of the account, amounting to $16,692.89, on appellee. At that time Dale Walker knew that the bills of lading were not in his bank for the 156 and 10 bales of cotton, and the bill of lading for the 32 bales of cotton was not in his bank, and the latter was not shown to have paid anything on said 32 bales of cotton. Walker knew that the bills of lading had gone out of his bank into the hands of Burks. The next morning after the foregoing transaction as to the checks, Dale Walker wired to W. L. Moody & Co. asking if a draft for $20,570 drawn by Burks on the bills of lading for 187 bales of cotton in possession of such company would be paid. On same day Moody Cotton Company answered that the cotton was held for the account of the First National Bank of Robstown, which answer was duly received by Dale Walker. On same day Walker inquired of the secretary-treasurer of the cotton company as to whether the draft of Burks would be honored. The draft had been forwarded through a Yoakum bank on Sunday, August 24, its date, to be forwarded by it to Galveston for collection, and it was presented to the Moody Cotton Company and payment refused. The draft drawn by Burks on appellee for $16,-692.89 was never forwarded for collection to appellee bank, and the latter knew nothing of its existence. After gaining the knowledge about the cotton from the cotton company, no inquiry was made by Walker or any one connected with the Agua Dulce Bank of appellee as to how it acquired the cotton, and appellee was not advised by the appellant bank that it had any claim on the cotton until a copy of appellant's cross-action was served on appellee, which was on August 15, 1925. Walker admitted on the trial that he had made no claim on appellee bank or any one else for the 188 bales of cotton, because he had no legal right to it. He did not know when the 10 bales were sold. On August 25 and 26, 1924, appellee paid out for Burks $14,745.69, which appellee would not have paid had it known that appellant claimed the cotton in Galveston. Afterwards Burks, although owing large sums to appellee, had in his possession bills of lading for 175 bales of cotton, 167 bales of which had been paid for by appellee, and Dale Walker, after telegraphing and telephoning Moody & Co., obtained the bills of lading for the 175 bales of cotton from Burks to be held as security by the Agua Dulce bank, which, through its officers, knew that the 167 bales of cotton had been paid for by appellee. When the bills of lading were demanded by appellee appellant agreed to let the cotton go to the purchasers and place the proceeds in escrow to be litigated over instead of the cotton, which was declining in value. Appellant failed to stand by its agreement, but disposed of the cotton, and the proceeds were not placed in escrow. There are other facts

found by the court which tend to show fraud and collusion on the part of appellant and Burks to obtain money from appellee bank.

The judgment rendered was to establish a claim for $45,372.72, in favor of appellee bank as against E. L. Burks and H. C. Burks, and made it a first and superior claim with all costs on a fund in the hands of the clerk of the court, the balance after paying the claim of the appellee bank and all costs to be paid to the First State Bank of Agua Dulce.

[2] The facts in the case show that, in response to the insistent demands of two of the stockholders in the Agua Dulce Bank, Dale Walker, president and cashier of the bank, determined to unload his friend, E. L. Burks, on some other bank, and appellee, the First National Bank of Robstown, was selected as the scapegoat upon whose head were to be placed all the iniquities and transgressions of the said Burks. As a means to this end the desirability of the business of Burks was emphasized by Dale Walker to Nusom, appellee's president, and it was stated that "he was a capable and reliable man, that everything was all right between Burks and the First State Bank of Agua Dulce," and, further, that "Burks was absolutely reliable, well fixed financially, had a valuable lot of property at Agua Dulce." Further, he said that Nusom could absolutely depend and rely upon anything that Burks did or said, and that he hoped Nusom would be able to accommodate Burks. He knew at that very time, for he had known Burks for a long time, that none of the statements made by him were true, but were false. He knew that Burks was indebted to his bank, but that fact was studiously concealed from Nusom, president of the Robstown bank. After gaining the confidence of the appellee bank in Burks, and after the negotiations between that bank and Burks, his bank, with his knowledge and consent, entered into a conspiracy with Burks to allow him to gain possession of certain bills of lading to 166 bales of cotton in order to deceive and mislead appellee bank and induce it to advance money to Burks. The scheme succeeded. The fact that Burks was largely indebted to the Agua Dulce Bank was studiously and effectively concealed from the Robstown Bank. Without the active aid of the Agua Dulce Bank Burks could never have received the large advances that he did from appellee bank. The after actions of Dale Walker, who was representing his bank, showed a persistent course of fraud and concealment to place the Robstown Bank in a position of loss that it would not have been in without active co-operation of the appellant bank with Burks. Whatever may have been the status of the bills of lading to the 156 and 10 bales of cotton before appellant loaned them to Burks to enable him to perpetrate a fraud on appellee bank, the Agua Dulce bank lost all claim on the bills of lading as between it and appellee, and is es-

282 S.W.—54

topped from alleging or securing any claim on the cotton represented by the bills of lading. There is no consolation or support for the appellant bank in the cases cited. The one chiefly relied upon by appellant is McMahan & Co. v. State Bank of Shawnee, 160 S. W. 403, an opinion of this court delivered through Associate Justice Taliaferro. There is nothing in the case that would relieve appellant from the effects of the law of estoppel. The evidence showed an active and continuing scheme upon the part of appellant, through its officer, to wrong and defraud appellee bank. Appellant may have had a prior claim on the cotton, but it lost such priority, not only by silence when it should have spoken, but by actively conniving at appellee being placed in a worse condition by dealing with Burks. Pom. Eq. Jur. § 731. We think the findings of fact show intentional fraud but whether there was any intention to defraud or not, appellant, under the facts, would be estopped to set up a superior right to the cotton.

The bills of lading turned over to Burks by appellant bank were in the name of Burks, and were not indorsed to or by any one, and they were an evidence of ownership in Burks who placed them in the hands of appellee as security for the advances to be made to him by appellee. Appellant placed Burks in the position of apparent ownership of the cotton, and whether such act on the part of appellant was criminal or merely negligent, the result was the same; appellee was deceived, and appellant is under the ban of estoppel. Pollard v. Vinton, 105 U. S. 7, 26 L. Ed. 998; Kempner v. Huddleston, 37 S. W. 1066, 90 Tex. 182.

[3] The rule is well stated by Bigelow on Estoppel, p. 607:

"It is now a well established principle that where the true owner of property, for however short a time, holds out another, or, with knowledge of his own right, allows another to appear, as the owner of or as having full power of disposition over the property the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Or where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the the rights so acquired are secure whether contested at law or in equity. Such rights do not depend upon the actual title or right of the party with whom they have directly dealt, but are derived from the conduct of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale."

The text fits the facts of this case like a garment, and is supported by a long, unbroken line of authority, among the number the Texas case cited of Kempner v. Huddleston, 37 S. W. 1066, 90 Tex. 182.

Appellant showed no basis whatever for

any claim to the 32 bales of cotton herein mentioned.

The cause was ably and carefully tried, the facts under the law are unanswerable, and the judgment will be affirmed.