

## NUMBER 13-07-00470-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

BARRAZA FAMILY LIMITED PARTNERSHIP,                    Appellant,

v.

CARLOS P. LEVITAS, INDIVIDUALLY
AND AS INDEPENDENT ADMINISTRATOR
OF THE ESTATE OF ALICIA P. LEVITAS
AND THE ESTATE OF SARAH PASOL
FACTOR, DECEASED,                    Appellee.

**On appeal from the 357th District Court of Cameron County, Texas.**

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Garza**

Appellant, the Barraza Family Limited Partnership (the "Partnership), appeals the

trial court's granting of a motion for summary judgment in favor of appellee, Carlos P.

Levitas, individually and as independent administrator of the estate of Alicia P. Levitas and

the estate of Sara Pasol Factor, deceased. By three issues, the Partnership argues that: (1) the trial court lacked subject matter jurisdiction; (2) the trial court erred in declaring that the underlying foreclosure sale was void as a matter of law; and (3) the trial court erred in calculating the amount of the note due to it as the mortgagee in possession. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying dispute pertains to money loaned to Sara and Alicia by Pedro L. Barraza and Maria Elena Barraza and to a piece of real property located in Cameron County, Texas, owned by Sara. On February 4, 1994, the Barrazas loaned Sara and Alicia $25,000. The loan was secured by a lien against the property through a deed of trust. The Barrazas recorded their lien in the official records of Cameron County. Over the next few years, the Barraza lien was modified several times. Each modification was subsequently recorded in the official records of Cameron County.

On May 8, 1996, Sara borrowed an additional sum of money from a second lender, B. Crowley Mack. Sara again used the property as collateral for the loan. Mack's security interest was recorded in the official records of Cameron County.

In May 1997, the Barraza lien was modified once again; this time, the Barrazas assigned their interest in the deed of trust to the Partnership. The Partnership subsequently loaned Sara and Alicia an additional sum of money secured by a new deed of trust on the property. On June 30, 1997, Sara and Alicia executed a promissory note payable to the Partnership for the principal amount of $65,000.

On October 6, 1997, Sara filed a petition for bankruptcy with the United States Bankruptcy Court for the Southern District of Texas.[1] The following day, October 7, 1997,

---

[1] The bankruptcy court dismissed Sara's October 6, 1997 bankruptcy petition on January 18, 1998.

Mack initiated foreclosure proceedings on his lien on the property. A third-party purchaser, Eric Williams, purchased the property at Mack's foreclosure sale.

On January 23, 1998, the Barrazas sent Sara and Alicia notice of their intention to foreclose on their lien. In this notice, the Barrazas stated that Sara and Alicia had failed to make any payments on the June 30, 1997 promissory note and were in default, and that the Barrazas themselves were owners and holders of the promissory note.[2] The notice also stated that the Barrazas intended to conduct a foreclosure sale of the property on March 3, 1998.

On February 24, 1998, Sara filed a second bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas.[3] While Sara's second bankruptcy petition was still pending, the Partnership, on March 3, 1998, foreclosed upon its lien on the property. In addition, William A. Faulk, Jr., counsel for the Barrazas and the Partnership, issued a trustee's deed to the Partnership as buyers of the property. The Partnership's foreclosure of its lien caused the title of the property to be transferred from Williams.

On October 5, 2001, Alicia, on behalf of Sara's estate, filed suit against the Barrazas and the Partnership, seeking a declaratory judgment that the foreclosure sales by Mack and the Partnership were void because they were conducted in violation of the automatic

---

[2] In their notice, the Barrazas identified the June 30, 1997 promissory note as:

That certain Promissory Note (as the same may have been extended, renewed, modified or replaced) dated June 30, 1997, executed by SARA PASOL and ALICIA P. LEVITAS payable to the order of the Lender in the original principal amount of $65,000, as of this date, the outstanding principal balance is approximately $65,000 and the outstanding secured but unpaid interest is approximately $5,110.65 with the approximate per diem interest accrual being $24.93.

[3] Sara's second bankruptcy petition was dismissed on May 18, 2000.

stay provision of the United States Bankruptcy Code.[4]  *See* 11 U.S.C. § 362 (setting out various acts subject to the automatic stay).  In response, the Barrazas and the Partnership moved for summary judgment, which the trial court granted.  The trial court's granting of the motion for summary judgment filed by the Barrazas and the Partnership was subsequently appealed to this Court.  *See Levitas v. Barraza*, No. 13-02-510-CV, 2004 Tex. App. LEXIS 6836, at \*\*1-4 (Tex. App.–Corpus Christi July 29, 2004, no pet.) (mem. op.) ("*Barraza I*").

In *Barraza I*, we concluded that the trial court erred in granting summary judgment to the Barrazas and the Partnership "because the foreclosures and subsequent sales of the property [by both Mack and the Barrazas] violated the bankruptcy stay and, thus, were void . . . ."  *Id.* at \*6.  We further concluded that Alicia had a justiciable interest and standing to file the original declaratory judgment action.  *Id.* at \*\*6-7.  As a result, the matter was remanded to the trial court for further proceedings.  *Id.* at \*11.

On remand, both parties filed competing motions for summary judgment.  The Barrazas and the Partnership filed two such motions—their third and fourth motions for partial summary judgment.  In their third motion for partial summary judgment, the Barrazas and the Partnership alleged that:  (1) the trustee's deed executed by Faulk was prima facie evidence that the foreclosure sale was valid; (2) Alicia did not provide evidence to rebut the presumption that the foreclosure sale was valid; and (3) they are entitled to title and possession of the property because the foreclosure sale was valid and because the

---

[4] Sara died on August 20, 2000, and Alicia was named the independent administrator of Sara's estate and, therefore, was substituted as "plaintiff."  *See* TEX. R. CIV. P. 151 ("If the plaintiff dies, the heirs, or the administrator or executor of such decedent may appear and upon suggestion of such death being entered of record in open court, may be made plaintiff, and the suit shall proceed in his or their name.").

4

trustee's deed was "duly executed, recorded[,] and delivered to the Defendant [appellee]." In their fourth motion for partial summary judgment, the Barrazas and the Partnership contended that they were mortgagees in possession and that appellee was required to "tender the amounts due under the debt, interest, advances for taxes, and improvements made to the property" while the Barrazas and the Partnership had possession of the property.

In her fifth amended original petition, Alicia sought (1) a declaratory judgment that the foreclosure proceedings conducted by Mack and the Barrazas were without proper and adequate notice and in violation of the automatic stay; (2) to quiet title to the property; and (3) a return of the property based upon tender of the principal and interest on the underlying promissory note. Alicia also re-urged a previously filed motion for partial summary judgment in which she alleged that the foreclosure sales were in violation of the automatic stay and, therefore, were void.

The trial court: (1) denied the third motion for partial summary judgment and granted in part the fourth motion for partial summary judgment filed by the Barrazas and the Partnership; and (2) granted Alicia's motion for summary judgment in part. In its final judgment, the trial court concluded that Alicia was entitled to a declaratory judgment that the foreclosures and subsequent sales of the Cameron County property were "void as a result of the stay created by the bankruptcy of Sarah [sic] Pasol Factor . . . ." In addition, the trial court awarded the Partnership "a Judgment for its debt, interest, advances for taxes and improvements made to the property in the total amount of $137,399.71 through the date of this Judgment" and noted that the Partnership "is a mortgagee in possession and shall continue as such until such time as all amounts under this Judgment awarded

5

. . . have been paid in full."  It is from this judgment that the Partnership now appeals.[5]

## II. STANDARD OF REVIEW

We review the trial court's granting of summary judgment de novo.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).  In our review, we take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve all doubts in favor of the non-movant.  *Id.*  When both parties move for summary judgment, and the trial court grants one motion and denies the other, the appellate court considers the summary judgment evidence presented by both sides, determines all questions presented, and if it determines the trial court erred, renders the judgment the trial court should have rendered.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

## III. ANALYSIS

### A. The Law of the Case Doctrine

In its first two issues, the Partnership[6] asserts that the trial court erred in concluding that (1) it had subject matter jurisdiction over the claims in this case and (2) the Barraza foreclosure sale was void as a matter of law.

With respect to subject matter jurisdiction, the Partnership contends that Alicia did not have "standing to raise the protection of the automatic stay since [she was not] the 'debtor' in the original bankruptcy filing and therefore cannot claim the protection of the

---

[5] On appeal, only the Partnership is listed as "appellant."  Moreover, after Alicia's death on December 28, 2005, Carlos P. Levitas was named independent administrator of both Sara's and Alicia's estates and, therefore, was substituted as "appellee."  *See* TEX. R. CIV. P. 151.

[6] Although they were named plaintiffs in the trial court, the Barrazas as individuals are not named as parties to this appeal.  *See* TEX. R. APP. P. 25.1(d)(5) (requiring that the notice of appeal state the name of each party filing the notice).

6

automatic stay in this proceeding." Appellee argues that: (1) this Court has previously resolved this issue and the issue is therefore governed by the law of the case doctrine; (2) Sara's bankruptcy filings indicate that Alicia was a co-debtor and is therefore entitled to the protection of the automatic stay; (3) "the Federal Rules of Bankruptcy Procedure allow for the substitution of a personal representative of a party's estate upon the death of the debtor"; and (4) this issue was waived under the doctrine of judicial estoppel.

The Partnership argues that the trial court erred in declaring the foreclosure sale void as a matter of law because: (1) the trustee's deed executed by Faulk is prima facie evidence that the foreclosure sale was valid; (2) appellee did not present evidence to rebut the presumption that the foreclosure sale was valid; and (3) the Partnership is entitled to title and possession of the property because the foreclosure sale was completed and Faulk's trustee's deed was "executed, recorded[,] and delivered to the Appellant." Once again, appellee argues that this Court has already resolved this issue and that the law of the case doctrine governs.

### 1. Applicable Law

Law of the case applies only to prior determinations of issues of law. *Turboff v. Gertner, Aron & Ledet Invs.*, 840 S.W.2d 603, 608 (Tex. App.–Corpus Christi 1992, writ dism'd). The law of the case doctrine has been defined by the Texas Supreme Court as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). By narrowing the issues in successive stages of the litigation, the law of the case doctrine attempts to achieve uniformity of decision as well as judicial economy and efficiency. *Pitman v. Lightfoot*, 937 S.W.2d 496, 513 (Tex. App.–San

Antonio 1996, writ denied); *Dessommes v. Dessommes*, 543 S.W.2d 165, 169 (Tex. Civ. App.–Texarkana 1976, writ ref'd n.r.e.). The doctrine is based on public policy and is aimed at putting an end to litigation. *Pitman*, 937 S.W.2d at 513. The doctrine has no application, however, where a party amends his pleadings and adds a new cause of action following reversal and remand from the first proceeding. *See Berryman v. El Paso Natural Gas Co.*, 838 S.W.2d 610, 614 (Tex. App.–Corpus Christi, 1992), *rev'd on other grounds by* 858 S.W.2d 362 (Tex. 1993) (per curiam); *Kropp v. Prather*, 526 S.W.2d 283, 286 (Tex. Civ. App.–Tyler 1975, writ ref'd n.r.e.).

If the first appeal is from the granting of a summary judgment motion, the doctrine will not apply if the parties or causes of action are different under the subsequent proceeding, or if the summary judgment evidence offered in support of the second motion materially differs from that offered in support of the first motion. *See Hudson*, 711 S.W.2d at 631; *Kropp*, 526 S.W.2d at 286.

Moreover, a decision rendered on an issue before the appellate court does not absolutely bar reconsideration of the same issue on a second appeal. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) (citing *Kempner v. Huddleston*, 90 Tex. 182, 37 S.W. 1066, 1066-67 (1896)). Application of the doctrine lies within the discretion of the court, depending on the particular circumstances surrounding the case. *See id.*; *see also BFI Waste Sys. of N. Am., Inc. v. N. Alamo Water Supply Corp.*, No. 13-04-00069-CV, 2006 Tex. App. LEXIS 3007, at *7 (Tex. App.–Corpus Christi Apr. 13, 2006, pet. denied) (mem. op.).

### 2. Discussion

In this appeal, the Partnership raises essentially the same contentions made in

8

*Barraza I* with respect to the foreclosure sale. *See Barraza*, 2004 Tex. App. LEXIS 6836, at **3-4. In *Barraza I*, we held that the Barraza foreclosure sale was in violation of the automatic stay and was, therefore, void. *Id.* at **4-6. In addition, we concluded that Alicia had a justiciable interest in the property and, as a result, had standing to file suit. *Id.* at **6-7.

Because the parties are substantially similar and the claims have not changed since our decision in *Barraza I*, we conclude that the law of the case doctrine applies to the Partnership's first two issues. *See Hudson*, 711 S.W.2d at 630; *Pitman*, 937 S.W.2d at 513. Further, the Partnership has not directed us to any newly discovered evidence that would undermine this Court's original decision in *Barraza I*. *See Turboff*, 840 S.W.2d at 608 (noting that the law of the case doctrine does not apply if the decision made in the first appeal is clearly erroneous).

Moreover, the Partnership's contention that Alicia lacks standing because she was not a debtor in the original bankruptcy filing is without merit. The record contains a copy of the real estate note and lien executed on January 23, 1995, referencing the original $25,000 loan. Both Sara and Alicia were named as co-debtors for the original loan and both signed the document. *See* 11 U.S.C. § 1301 (entitled "Stay of action against co[-]debtor" and providing that once a bankruptcy petition has been filed "a creditor may not act, or commence or continue any civil action, to collect all of any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor . . . ."); *see also Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988) (holding that actions taken against a debtor after the bankruptcy petition has been filed are void and without legal effect). We hold that the trial court did not err in concluding that it had subject

9

matter jurisdiction and that the foreclosure sale was in violation of the automatic stay and, therefore, void. Accordingly, we overrule the Partnership's first two issues.

## B. Mortgagees in Possession and Calculation of the Amount Due Under the Promissory Note

In its third issue, the Partnership asserts that the trial court erred in calculating the amount due under the June 30, 1997 promissory note. In addition, the Partnership argues that it has been the mortgagee in possession since it foreclosed on its lien and, therefore, it is entitled to "debt and interest and reimbursement for the taxes and insurance premiums paid . . . and the costs of necessary repairs."

### 1. Applicable Law

"A mortgagee lawfully in possession of the mortgaged property has a right to retain possession until the mortgage debt has been paid in full." *Valley Int'l Props., Inc. v. Brownsville Sav. & Loan Ass'n*, 581 S.W.2d 222, 225 (Tex. App.–Corpus Christi 1979, no writ) (citing *Jasper State Bank v. Braswell*, 130 Tex. 549, 111 S.W.2d 1079, 1083 (1938)); *see Abram v. Se. Fund*, 404 S.W.2d 673, 677 (Tex. Civ. App.–Tyler 1966, writ ref'd n.r.e.). In order for a mortgagee to be lawfully in possession of a piece of property, the possession must be "peaceably and legally acquired[,] . . . taken in good faith, free from deceit, fraud, or wrong, and without violation of any contract relation with the mortgagor." *Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 74 (Tex. App.–Fort Worth 2005, no pet.) (quoting *Wilhite v. Yount-Lee Oil Co.*, 140 S.W.2d 293, 296 (Tex. Civ. App.–Texarkana 1940, writ ref'd) and citing *Robinson v. Smith*, 133 Tex. 378, 128 S.W.2d 27, 30 (1939)).

In *Robinson*, the court held that a mortgagee who obtains possession with express

10

or implied consent of the mortgagor or who has purchased the property at a void or irregular foreclosure sale is a mortgagee lawfully in possession. *Robinson*, 128 S.W.3d at 30. However, "[u]nder our law[,] a mortgagee in possession of either real or personal property with the consent of the mortgagor undoubtedly has special rights in the property, but the mere transfer of possession does not vest all of the mortgagor's title and estate in the mortgagee." *Amco Trust, Inc. v. Naylor*, 159 Tex. 146, 317 S.W.3d 47, 51 (1958).

Moreover, a mortgagee in possession is obligated to incur and pay expenses necessary for the upkeep of the premises. *See Pioneer Bldg. & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 730 (Tex. Civ. App.–Waco 1938, writ dism'd); *see also Chitsey v. Lockshin*, No. 03-00-00663-CV, 2001 Tex. App. LEXIS 7297, at *20 (Tex. App.–Austin Nov. 1, 2001, pet. denied). But, the mortgagee in possession "is entitled to his debt and interest and reimbursement for the taxes and fire insurance premiums paid by him and the costs of necessary repairs and is bound to account for the payments made to him and the rents and profits received by him or which he ought to have received by the use of reasonable diligence and care." *Johnson v. Frierson*, 133 S.W.2d 594, 597 (Tex. Civ. App.–Waco 1939, writ dism'd) (citing *Cowan*, 123 S.W.2d at 727).

### 2. Discussion

The parties do not dispute the trial court's characterization of the Partnership as the mortgagee in possession of the property. Based on the governing case law, the Partnership is entitled to hold the property until the underlying debt and interest and any other costs associated with the upkeep of the property are paid. *See Cowan*, 123 S.W.2d at 730; *see also Chitsey*, 2001 Tex. App. LEXIS 7297, at *20. However, appellee is entitled to offset that amount by any payments received or "ought to have [been] received

11

by the use of reasonable diligence and care" by the Partnership in the form of rent or profits.  *See Johnson*, 133 S.W.2d at 597.

The trial court awarded the Partnership "a Judgment for its debt, interest, advances for taxes and improvements made to the property in the total amount of $137,399.71 through the date of this Judgment" and noted that the Partnership "is a mortgagee in possession and shall continue as such until such time as all amounts under this Judgment awarded . . . have been paid in full."

In its fourth motion for partial summary judgment, the Partnership alleged that it was entitled to $475,074.32[7] from appellee "on the notes and advances, as evidenced by [an] amortization scheduled attached . . . ."  The record contains an uncontroverted affidavit executed by Carlos P. Levitas noting that he contracted Chavez Automated Design Consultants Corporation to perform an analysis of the property to determine any reasonable offsets for rent or profits to which appellee would be entitled.  Relying on the analysis, Carlos concluded that, "with the use of due diligence," the property could have yielded approximately $3,500 per month for the 105 months that the property had been in the Partnership's possession.  *See* TEX. R. CIV. P. 166a(c) (providing that a summary judgment may be based on the uncontroverted evidence of an interested witness if it is

---

[7] On appeal, the Partnership contends that the amount due is $490,145.32.  This figure is also referenced in the amortization schedule attached to its fourth motion for partial summary judgment.  However, the Partnership, in its live pleading in the trial court, alleged that it was only entitled to $475,074.32 from appellee.  Therefore, we will use the $475,074.32 figure that the Partnership used in its live pleading.  *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) ("'Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.  A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact.'") (quoting *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983); *Gevinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 467 (Tex. 1969)); *see also Blitz Holdings Corp. v. Grant Thornton, LLP*, No. 01-04-00627-CV, 2008 Tex. App. LEXIS 3315, at **32-35 (Tex. App.–Houston [1st Dist.] May 8, 2008, pet. denied) (mem. op. on reh'g).

"clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been easily controverted"). Based on this evidence, appellee would be entitled to an offset of $367,500.00 from the Partnership.

By subtracting the $367,500.00 offset from the $475,074.32 figure alleged by the Partnership and adding one year's worth of interest at 14% per annum, we arrive at a figure that is approximately that which the trial court found. Therefore, the trial court's figure appears to reconcile with the applicable case law regarding the amounts to which a mortgagee in possession is entitled. *See Johnson*, 133 S.W.2d at 597; *Cowan*, 123 S.W.2d at 730; *see also Chitsey*, 2001 Tex. App. LEXIS 7297, at *20.

The crux of the Partnership's remaining argument is that the trial court used the wrong interest rate to calculate the amount due. The Partnership alleges that the trial court mistakenly used a 14% interest rate when it should have used an 18% interest rate to calculate the interest due. However, in the June 30, 1997 promissory note, the parties agreed to an annual 14% interest rate. The Partnership has not directed us to any evidence in the record demonstrating that it was entitled to 18% interest. In addition, the Partnership has not cited to any authority providing that it was entitled to ignore the agreed upon interest rate of 14% and impose a higher interest rate of 18%. We therefore conclude that the trial court did not err in using a 14% interest rate in calculating the interest due on the note.

Based on the foregoing, we conclude that the trial court did not err in awarding the Partnership the total amount of $137,399.71 through the date of the judgment. Accordingly, we overrule the Partnership's third issue.

13

## IV. CONCLUSION

Having overruled all of the Partnership's issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 5th day of March, 2009.