TEXAS STATE EMPLOYEES UN-ION/CWA LOCAL 6184 A.F.L.C.I.O.; Pat McCowan; Betty McCoy; Ed Carpenter; and Lydia DeLeon, Individually and on Behalf of Others Similarly Situated, Appellants,

v.

TEXAS WORKFORCE COMMISSION; Council on Workforce and Economic Competitiveness; Michael Sheridan, Individually and in his Official Capacity and his successors in office; and George Bush in his Official Capacity as Governor of the State of Texas and his successors in office; Gulf Coast Workforce Development Board; and Coastal Bend Workforce Development Board, Appellees.

No. 03–99–00171–CV.

Court of Appeals of Texas, Austin.

March 2, 2000.

Rehearing Overruled May 18, 2000.

Larry Daves, Larry R. Daves & Associates, San Antonio, for appellants.

Lucinda J. Garcia, Wood, Boykin & Wolter, P.C., Corpus Christi, for Coastal Bend.

David S. Morales, Asst. Atty. Gen., Austin, for Texas Workforce; Council on Workforce; Michael Sheridan; and George Bush.

Marcy Hogan Greer, Fulbright & Jaworski L.L.P., Austin, for Gulf Coast.

Before Justices JONES, KIDD and PATTERSON.

MACK KIDD, Justice.

This is an appeal of a trial-court order granting appellees [1] their plea to the jurisdiction, thereby dismissing each of appellants' causes of action. In ten issues, appellants, former employees of the Texas Workforce Commission, contend that the trial court erred in ruling that their claims were jurisdictionally barred by the doctrine of sovereign immunity and a lack of standing. Concluding that the trial court erred in dismissing appellants' causes of action for lack of jurisdiction, we will reverse the trial court's order and remand this cause for further proceedings.

### BACKGROUND

This suit arises out of the complaints of former employees of the Texas Workforce Commission (the "Commission") who lost their jobs as a result of the Commission's decision to privatize several of the State's workforce-development programs. The

---

1. Appellees are the Texas Workforce Commission; the Council on Workforce and Economic Competitiveness; Michael Sheridan, Individually and in his Official Capacity and his successors in office; George Bush in his Official Capacity as Governor of the State of Texas and his successors in office; the Gulf Coast Workforce Development Board; and the Coastal Bend Workforce Development Board. For convenience, we will refer to these parties collectively as the "Commission," except where it is necessary to distinguish among them for clarity.

Commission was established in 1995 to operate Texas's integrated workforce-development system that had been created by consolidating the State's various job training and employment-related programs. *See* Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 301.001, 1995 Tex. Gen. Laws 3543, 3581. It was also created to administer Texas's unemployment compensation program. *See id.*

In 1997, the Commission decided to overhaul its structure by transferring to the private sector the responsibility of administering several of the State's workforce-development programs. Specifically, it chose to shift all authority over the administration of these programs to certain certified local workforce-development boards.[2] In turn, these boards were required to hire private service providers that would directly administer these programs on a contractual basis. As a result, the Commission terminated many of the employees who had been assigned to work on the affected programs.

The Texas State Employees Union (the "Union") then filed suit against the Commission on behalf of the terminated employees, all of whom were members of the Union, complaining that the Commission had unlawfully granted public property—namely office space, computer equipment, and office supplies—to private entities in violation of the Texas Constitution. *See* Tex. Const. art. III, § 51; art. VIII, § 3; art. XVI, § 6(a). The Commission responded by filing a special exception and a plea to the jurisdiction, contending that the cause of action was barred by the doctrine of sovereign immunity and, fur-

thermore, that appellants lacked standing to sue. Several amended petitions followed, as did further answers and pleas to the jurisdiction. Following the filing of appellants' fourth amended petition, the trial court dismissed the Union as a party, finding that the Union lacked standing to bring suit on behalf of the employees. Appellants thereafter amended their pleadings to substitute four terminated employees in place of the Union.

By the time appellants filed their sixth and final amended petition, the suit had been expanded to include three causes of action; appellants had also added as defendants the Council on Workforce & Economic Competitiveness, the Governor, and the Gulf Coast Local Workforce Development Board ("Gulf Coast") and the Coastal Bend Workforce Development Board ("Coastal Bend") (collectively, the "local development boards").[3] Appellants' pleadings alleged that: (1) the Commission had violated, and would continue to violate, the Texas Constitution by transferring state property to private entities without restricting the use of the property to state, rather than private, purposes; (2) the Commission had deprived appellants of a property interest in their continued employment, as well as their interest in participating in the State's retirement system, without due course of law; and (3) the local development boards had breached their contracts with the Commission by failing to provide appellants, the intended beneficiaries of the contracts, with hiring preferences. With respect to all three claims, appellants sought declaratory and injunctive relief as their sole remedy.

2. The Legislature authorized the Commission to form these development boards for the purpose of planning and overseeing the delivery of workforce training services and to evaluate workforce development in the local area. *See* Workforce and Economic Competitiveness Act, Tex. Gov't Code Ann. §§ 2308.253, .256 (West Supp.2000). The parties agree that these boards are quasi-governmental entities that may be afforded the protections of sovereign immunity.

3. Gulf Coast and Coastal Bend are two of the local development boards with which the Commission contracted to transfer the administration of these programs. One of the terms of the contract required the local development boards to ensure that employees previously assigned to work on the affected programs at the Commission would be granted preference in hiring by the local service providers. Despite this provision, none of the appellants were offered jobs.

The Commission and the local development boards responded once again by filing pleas to the jurisdiction, arguing that each of appellants' claims was barred by sovereign immunity, a lack of standing, or both. After considering the pleadings and arguments of counsel, the trial court granted the Commission's plea to the jurisdiction and dismissed all of appellants' claims with prejudice. Appellants now appeal the district court's judgment in ten issues, arguing that the trial court erred in dismissing their suit because neither a lack of standing nor sovereign immunity deprived the trial court of jurisdiction over their causes of action.

### PLEA TO THE JURISDICTION

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *See Fountain Parkway, Ltd. v. Tarrant Appraisal Dist.*, 920 S.W.2d 799, 803 (Tex.App.—Fort Worth 1996, writ denied); *Dolenz v. Texas State Bd. of Med. Exam'rs*, 899 S.W.2d 809, 811 (Tex.App.—Austin 1995, no writ). The plea alleges that there are incurable jurisdictional defects visible on the face of the plaintiff's pleadings, taking the pleadings' allegations as true. *See Bybee v. Fireman's Fund Ins. Co.*, 160 Tex. 429, 331 S.W.2d 910, 917 (1960); *Firemen's Ins. Co. v. Board of Regents of the Univ. of Tex. Sys.*, 909 S.W.2d 540, 541 (Tex.App.—Austin 1995, writ denied). The truth of the plaintiff's allegations is at issue only if the defendant pleads and proves that the allegations were fraudulently made to confer jurisdiction on the court. *See Curbo v. State*, 998 S.W.2d 337, 341 (Tex.App.—Austin 1999, no pet.); *Flowers v. Lavaca County Appraisal Dist.*, 766 S.W.2d 825, 827 (Tex. App.—Corpus Christi 1989, writ denied); *cf. Bernard Hanyard Enter. v. McBeath*, 663 S.W.2d 639, 642 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Therefore, unless fraud is pleaded and proven, dismissing a cause of action for lack of subject-matter jurisdiction is proper only when incurable jurisdictional defects are shown on the face of plaintiff's pleadings, thus rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See Curbo*, 998 S.W.2d at 341; *Dolenz*, 899 S.W.2d at 811; *Flowers*, 766 S.W.2d at 827.

When reviewing a trial-court order dismissing a cause for want of jurisdiction, we are to "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *Pearce v. City of Round Rock*, 992 S.W.2d 668, 671 (Tex.App.—Austin 1999, pet. denied). Because the question of subject-matter jurisdiction is a legal question, we review *de novo* a trial court's ruling on a plea to the jurisdiction. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *Firemen's Ins. Co.*, 909 S.W.2d at 542.

### WRONGFUL TERMINATION

We first address appellants' claim for wrongful termination of employment and decide whether the doctrine of sovereign immunity deprived the trial court of jurisdiction to entertain this claim. Rather than seeking dismissal of this claim on the basis of sovereign immunity through a motion for summary judgment, the Commission sought a dismissal in a plea to the jurisdiction. We observe that, had the bar of sovereign immunity been presented in conjunction with a motion for summary judgment, both parties would have had the opportunity to present summary-judgment evidence, such as the written employment policies that appellants allege establish their right to continued employment. *See* Tex.R. Civ. P. 166a. The trial court could then have made an informed decision *on the merits*. Here, the Commission instead chose to make this challenge through a plea to the jurisdiction. The trial court was thus obliged, as are we, to take the pleadings as true and construe the pleadings liberally in favor of conferring jurisdiction. *See Texas Air Control Bd.*, 852 S.W.2d at 446; *Curbo*, 998 S.W.2d at 341.

Appellants alleged in their pleadings that they enjoyed a "protected expectancy of continued employment as state employees" based upon the "written policies and practices of the Commission," and that by terminating them, the Commission unlawfully deprived appellants of this property right "without due course of law."[4] Appellants pleaded in the alternative that they held a property right in their continued participation in the State's retirement system.

In support of its plea to the jurisdiction, the Commission did not allege that these pleadings were fraudulently made for the purpose of conferring jurisdiction upon the trial court. Nor did it specially except to the claim on grounds that the pleadings were deficient.[5] Rather, the Commission argued that appellants had no vested rights in either their employment or the State's retirement system because they were at-will employees as a matter of law. The Commission reasoned that appellants therefore possessed no constitutionally protected property right that would permit them to sue the Commission absent a waiver of sovereign immunity.

■ The Commission is correct that Texas is an "employment-at-will" state where employment for an indefinite term may be terminated at will and without cause by either party. *See Winters v. Houston Chronicle Publ'g. Co.*, 795 S.W.2d 723, 724 (Tex.1990); *East Line & Red River R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888); *Cote v. Rivera*, 894 S.W.2d 536, 539 (Tex.App.—Austin 1995, no writ). Nevertheless, written material such as an employee handbook or personnel manual may in some circumstances alter an employee's at-will status if the material contains language that specifically and expressly limits the relationship and curtails the employer's right to terminate the employee. *See Morgan v. Jack Brown Cleaners, Inc.*, 764 S.W.2d 825, 826 (Tex. App.—Austin 1989, writ denied); *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 406 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.).

Here, appellants' pleadings allege that by its written policies, the Commission altered the employment relationship so as to create a "protected expectancy of continued employment." Taking these pleadings as true and construing them liberally in favor of conferring jurisdiction, we perceive no basis for the trial court's finding that sovereign immunity bars appellants' claim.

■ It is well settled that no waiver of sovereign immunity is necessary before one may sue the State for the taking of a vested property right without due course of law. *See Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385–86 (Tex.1967); *Bohannan v. Texas Bd. of Criminal Justice*, 942 S.W.2d 113, 118 (Tex.App.—Austin 1997, writ denied); *Ho v. University of Tex. at Arlington*, 984 S.W.2d 672, 682 (Tex.App.—Amarillo 1998, pet.denied). Assuming, as we must, that the Commission's written policies did create a protect-

---

4. Article I, section 19 of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." It is the United States Constitution that uses the term "due process of law" when speaking of a deprivation of one's interest in life, liberty, or property. U.S. Const. amend. XIV, § 1. The textual difference between "due course of law" and "due process of law" is without meaningful distinction. *See United States Gov't v. Marks*, 949 S.W.2d 320, 326 (Tex.1997); *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995). Consequently, Texas has tradi- tionally followed federal due process interpretations when applying its due course of law clause. *See Than*, 901 S.W.2d at 929.

5. If the Commission had specially excepted to this cause of action on this basis, appellants nevertheless would have been entitled to an opportunity to amend their pleadings in order to cure any defect or deficiency. *See Pearce v. City of Round Rock*, 992 S.W.2d, 668, 672 (Tex.App.—Austin 1999, pet. denied); *Washington v. Fort Bend I.S.D.*, 892 S.W.2d 156, 159 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

ed expectancy of continued employment as alleged and that appellants' at-will status thereby was altered, appellants had a constitutionally protected property interest in their jobs and were entitled to seek redress under the due-course-of-law provision of the Texas Constitution. *See* Tex. Const. art. I, § 19. Constitutional takings claims such as this may be asserted against the State without regard to the doctrine of sovereign immunity. *See Stone*, 417 S.W.2d at 385–86; *Bohannan*, 942 S.W.2d at 118; *Ho*, 984 S.W.2d at 682. And since appellants requested equitable relief in the form of an order reinstating them to their jobs, rather than monetary damages, the remedy sought was a permissible one. *See Texas S. Univ. v. Araserve Campus Dining Servs.*, 981 S.W.2d 929, 935 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *Alcorn v. Vaksman*, 877 S.W.2d 390, 404 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (unlike suits for monetary damages, suits against State seeking equitable remedies for constitutional violations are allowed without State's consent).

In ruling on the Commission's plea to the jurisdiction, the trial court was obliged to accept appellants' pleadings as true, construe them liberally in appellants' favor, and dismiss them only if they affirmatively established that the trial court lacked jurisdiction to hear the complaint. *See Texas Air Control Bd.*, 852 S.W.2d at 446; *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989); *Bush v. Texas Dep't of Protective & Reg. Servs.*, 983 S.W.2d 366, 368 (Tex.App.—Fort Worth 1998, pet. denied). Taking appellants' pleadings as true, we find no basis upon which to conclude that the court lacked jurisdiction to hear their claim for wrongful termination. Consequently, we hold that the trial court erred in dismissing appellants' claim for lack of jurisdiction.

We do not, of course, purport to speak to the merits of appellants' allegations, which we must take as true on appeal from a dismissal order. We offer no opinion on whether sovereign immunity may in fact ultimately bar appellants' claim. This will depend upon the facts as they are developed. We merely hold that in light of appellants' pleadings and the liberal test that must be applied in ruling on pleas to the jurisdiction, the trial court erred in dismissing these claims on this basis. Accordingly, we sustain appellants' issue regarding their wrongful-termination claim.

## REMAINING CAUSES OF ACTION

Although our sustaining of appellants' wrongful-termination issue necessitates a reversal and remand of this entire cause, we nevertheless believe it is prudent and serves the interests of judicial economy to address briefly the two remaining causes of action that the court also dismissed for lack of jurisdiction, as well as the dismissal of the Union for lack of standing.

### Third–Party Beneficiary Claim

First, we believe that the trial court's dismissal of appellants' third-party beneficiary claim also was in error. Appellants alleged that they were the intended beneficiaries of the contracts between the Commission and the local development boards and that they were thus entitled to sue Gulf Coast and Coastal Bend for the alleged breach. In dismissing this claim for lack of jurisdiction, the trial court cited as its basis both sovereign immunity and appellants' lack of standing. It is well settled that a person who is not a party to a contract may nevertheless have standing to enforce the contract if it was made for that person's benefit. *See Paragon Sales Co., Inc. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 661 (Tex.1989); *Knox v. Ball*, 144 Tex. 402, 191 S.W.2d 17, 23–24 (1945); *Barnes v. Wendy's Int'l, Inc.*, 857 S.W.2d 728, 730–31 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Gonzalez v. City of Mission*, 620 S.W.2d 918, 922 (Tex.App.—Corpus Christi 1981, no writ). Because we must take the allegations in appellants' pleadings as true, we assume appellants are the intended beneficiaries of the contracts and that as such, they stand in the

shoes of the Commission and thus have standing to enforce the contracts. *See Texas Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 218 (Tex.App.—Fort Worth 1994, writ denied) (third-party beneficiary "steps into shoes" of contracting party and assumes same rights and duties as contracting party); *Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 434–35 (Tex.App.—Dallas 1988, no writ) (third-party beneficiary "steps into shoes" of contracting party and is subject to all provisions of contract); *Texas Pac. Indem. Co. v. Atlantic Richfield Co.*, 846 S.W.2d 580, 583 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (third-party beneficiary "steps into shoes" of named insured and is bound by same terms).

Assuming, as we have already based upon the pleadings, that appellants enjoyed a vested property right in their jobs and, further, that appellants were the intended beneficiaries of the contracts between the Commission and the local development boards, we see no basis on which to conclude that the trial court lacked jurisdiction to hear this claim. Rather than a jurisdictional question that can be determined on the pleadings alone, the parties' disagreement over the nature of appellants' rights, if any, as third-party beneficiaries of the contracts is a dispute that must be decided *on the merits*. Thus, the trial court possessed jurisdiction to hear this claim.

### Unlawful Expenditures of State Funds

In their final cause of action, appellants sought to enjoin the Commission and its executive director from unlawfully expending public funds by transferring state property to the local development boards without requiring that the property be used solely for state, rather than private, purposes. Appellants alleged that this transfer violated the Texas Constitution insofar as it permitted the private entities to employ state property for private use. *See* Tex. Const art. III, § 51 ("The Legislature shall have no power to make any grant ... of public moneys to any individual ....""); art. VIII, § 3 ("Taxes shall be levied and collected by general laws and for public purposes only."); art. XVI, § 6(a) ("No appropriation for private or individual purposes shall be made, unless authorized by this Constitution.").

In arguing for dismissal, the Commission and its executive director contended that only the state attorney general has standing to institute legal action to redress alleged mismanagement of state property under section 403.276 of the Government Code. *See* Tex. Gov't Code Ann. § 403.276(c), (d) (West 1998). This argument, however, does not end our inquiry. Appellants do not seek redress under the statutory provision the Commission relies upon. Rather, as both taxpayers and state employees, they seek to enjoin the Commission from expending funds in violation of the Texas Constitution. *See* Tex. Const. art. III, § 51; art. VIII, § 3; art. XVI, § 6(a). Although taxpayers generally cannot maintain suits for the recovery of public funds already expended, they do have standing to bring a suit in equity to enjoin prospective illegal expenditures of public funds. *See Osborne v. Keith*, 142 Tex. 262, 177 S.W.2d 198, 200 (1944); *Zimmelman v. Harris County*, 819 S.W.2d 178, 182 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Navarro Auto-Park, Inc. v. City of San Antonio*, 574 S.W.2d 582, 583 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Kordus v. City of Garland*, 561 S.W.2d 260, 262 (Tex.Civ. App.—Tyler 1978, writ ref'd n.r.e.); *First Nat'l Bank v. Prudential Ins. Co.*, 551 S.W.2d 112, 113 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). To establish standing in such a suit, the plaintiff must plead that: (1) he or she is a taxpayer; (2) there exists an agreement under which public funds are to be expended in the future; and (3) the agreement or contract violates the Constitution or is otherwise illegal. *See Osborne*, 177 S.W.2d at 200; *Kordus*, 561 S.W.2d at 262. Here, appellants, as taxpayers and state

employees, alleged that: (1) they are taxpayers of the State; (2) private service providers will receive unqualified grants of state funds and property under the terms of the contracts between the Commission and the local development boards; and (3) the contract and the transfers thereunder violate specific provisions of the Texas Constitution. Taking these allegations as true, these individuals have standing to sue.

Additionally, the Commission is incorrect in its last argument that the doctrine of sovereign immunity precludes appellants' suit to enjoin the unlawful expenditure of state funds. Suits challenging an agency's action as being outside the scope of its delegated authority are not suits against the State requiring legislative permission to sue. *See Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 154 (Tex.App.—Austin 1998, no pet.); *Public Util. Comm'n v. City of Austin*, 728 S.W.2d 907, 911 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Furthermore, suits to enforce state constitutional rights do not require legislative waiver of sovereign immunity. *See Brazosport Sav. & Loan Ass'n v. American Sav. & Loan Ass'n*, 161 Tex. 543, 342 S.W.2d 747, 750 (1961); *Lopez v. Public Util. Comm'n*, 816 S.W.2d 776, 783 (Tex.App.—Austin 1991, writ denied). Because appellants sought to enjoin the Commission from acting outside of its constitutional and statutory authority by making unrestricted transfers of state property to private entities, no explicit waiver by the State was necessary. Consequently, sovereign immunity does not deprive the trial court of jurisdiction over this claim.

### Standing of the Union

Finally, the trial court dismissed the Union on the basis of a lack of standing. Just as the individual employees have standing to sue, we conclude that the Union has standing to sue on behalf of its members, those same employees. An association has standing to sue on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Texas Air Control Bd.*, 852 S.W.2d at 447; *Birnbaum v. Alliance of Am. Insurers*, 994 S.W.2d 766, 780 (Tex. App.—Austin 1999, pet. filed). We have already concluded that the Union's members have standing to sue in their own right. We also consider the Union's goal of enjoining any further unconstitutional transfers of state property to be directly related to the Union's stated purpose of protecting the interests of both taxpayers and state employees. Finally, the nature of the claim and the equitable relief requested do not require the participation of the Union's members on an individual basis. *See Texas Air Control Bd.*, 852 S.W.2d at 448 (where an association "seeks only prospective relief, raises only issues of law, and need not prove the individual circumstances of its members to obtain that relief," third element of associational standing test is met). Thus, the trial court erred in dismissing the Union as a plaintiff for lack of standing.

### CONCLUSION

Having sustained appellants' issues challenging the dismissal of their claims, we reverse the trial court's order granting the Commission's plea to the jurisdiction and remand this cause for further proceedings not inconsistent with this opinion.