TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00518-CV







Thomas A. Davis, Jr. and Texas Department of Public Safety/Lon Burnam, Appellants


v.


Lon Burnam/Thomas A. Davis, Jr. and Texas Department of Public Safety, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT

NO. GN-301665, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING






O P I N I O N



 The parties in this case present two issues concerning pleas to the jurisdiction. First,
we will decide whether a court has jurisdiction to issue a declaratory judgment concerning an alleged
destruction of state records. Second, we will analyze the proper procedure to follow after a court
denies a plea to the jurisdiction on a question of statutory construction. (1) For the reasons stated
below, we reverse the judgment of the district court in part, vacate in part, and remand for further
proceedings.



BACKGROUND


 On May 12, 2003, the Texas House of Representatives convened and was called to
order by the speaker. The House roll was called, and a quorum was not present. (2) Missing from the
chamber were 51 members, including Lon Burnam, an elected member of the House of
Representatives from District 90. (3) House members in attendance in Austin, relying on House rules, 
ordered a call of the House to secure a quorum. (4) 

 As a result, the sergeant-at-arms asked Thomas A. Davis, the director of the Texas
Department of Public Safety (the Department), to secure the attendance of the absent House
members. On May 12 and May 13, employees of the Department were directed to locate and
apprehend Burnam and his colleagues and return them to the Capitol so that the House could secure
a quorum. See Tex. H.R. Rule 5, § 7, 78th Leg., R.S., 2003 H.J. of Tex. 67, 68. At that time,
Burnam and the other fifty House members were in Ardmore, Oklahoma. Their intent was to break
quorum in the House to prevent a vote on proposed Texas Congressional district boundaries then on
the legislative agenda. Burnam and the other House members returned to Texas of their own accord
on May 14.

 On May 20, Burnam and two other House members requested documents from the
Department regarding its efforts to locate them during their absence from the House. See Tex. Gov't
Code Ann. §§ 552.001-.353 (West 1994 & Supp. 2004). In particular, they requested 


all documents regarding the Legislators not attending the legislative session May 12
to 15, including but not limited to information regarding their location, procedures
used to investigate their location, interviews with legislative staff and/or spouses or
other persons to investigate their location, and communication with the federal
Department of Homeland Security pertaining to the Legislators.



On May 22, Burnam amended the request:


This morning I became aware from media reports and confirmation by [the
Department's] office that destruction of documents relating to my inquiry occurred
last week. Unfortunately I have now become aware through a reliable source that
document destruction continued last night. . . . Please provide me with the name of
any Department of Public Safety employees involved directly or indirectly in the
destruction of documents since May 12th. Additionally, I hereby request copies of
any and all documents relating to:


(1) all written policies of DPS relating to document retention;


(2) all written policies of DPS relating to document destruction;


(3) any and all documents, electronic data, etc. relating to document destruction
which [sic] between May 13, 2003 and the date of this letter;


(4) all documents relating to or reflecting communications by and between DPS (or
any civilian or non-civilian employee of DPS) and the Office of Homeland
Security;


(5) all documents reflecting any and all contact with any companies and/or
individuals who have, at any time in the past, been employed by or consulted by
DPS relating to computer security, computer reconfiguration, computer hard
disc "clean up"; computer hard disc replacement, or any facet of network or
individual computer hardware/software modification, restoration, backup
systems, etc.


It is the intent of the undersigned to request any and all information that would relate,
directly or indirectly, to the alleged destruction of documents by DPS or any
employee, consultant or agent thereof from May 13, 2003 to present, and to obtain
copies of all documentation that would reflect that document destruction since May
13, 2003, is not in accordance with normal operating procedures of DPS, regardless
of how the above requests are phrased.


On May 22, Burnam filed suit in district court, seeking an injunction ordering the Department to
cease the alleged destruction of documents, a declaratory judgment concerning the Department's
ministerial duties to retain documents, and a writ of mandamus ordering production of all the
requested documents. (5) See Tex. Gov't Code Ann. §§ 552.321, .3215 (West Supp. 2004) (suits
concerning production of documents). In response, the Department filed a general denial. On June
5, the Department submitted a plea to the jurisdiction on two grounds. First, it asserted that the case
was not ripe at the time filed because the Department had neither, within a reasonable period of time,
refused to request an opinion of the attorney general nor refused to supply the information in conflict
with an attorney general determination. See id. § 552.321. Second, it argued that the case was moot
because at that point it had given Burnam all documents in its possession related to the request and
because Burnam "has established no basis to assert that documents were destroyed after the May 19
request." 

 On June 12, Burnam amended his pleading to include a request for a declaration that
the Department lacked statutory authority to search for or attempt to arrest members of the House
of representatives when requested by the House sergeant-at-arms. (6) He also invoked the court's
jurisdiction under chapter 441 of the government code. See id. § 441.185, .187 (West 1998 & Supp.
2004) (destruction of state records). The Department then amended its plea to the jurisdiction by
adding the argument that the suit is barred by the doctrine of sovereign immunity. (7) The district court
heard argument on the plea to the jurisdiction on June 13. On August 4, the court granted the plea
to the jurisdiction concerning document production and destruction, stating that those claims were
moot. It denied the plea on the question of the statutory authority of the Department (8) and declared
that the Department lacked statutory authority to arrest House members in response to a call for
quorum. Both parties have appealed.


DISCUSSION


Destruction of Documents Claim

 On appeal, Burnam presents one issue, in which he claims that the district court erred
in granting the Department's plea to the jurisdiction on the question of whether the Department
destroyed documents in violation of statutory guidelines. See Tex. Gov't Code Ann. § 552.351
(West Supp. 2004); see also id. §§ 441.185, .187, 552.321, .3215. In its plea to the jurisdiction and
on appeal, the Department argues that the claim is barred by sovereign immunity. The district court
ruled that this claim was moot. We will first address sovereign immunity and then turn to mootness.

 Subject-matter jurisdiction is essential to the authority of a court to decide a case. See
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Texas Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction challenges the trial court's
authority to determine the subject matter of a specific cause of action. Texas State Employees
Union/CWA Local 6184 v. Texas Workforce Comm'n, 16 S.W.3d 61, 65 (Tex. App.--Austin 2000,
no pet.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if
all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional
defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to
confer jurisdiction on the trial court. See id. Because subject-matter jurisdiction presents a question
of law, we review the district court's decision de novo. Id. In reviewing a trial court's ruling on a
plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings
in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations
as true. Texas Ass'n of Bus., 852 S.W.2d at 443.

 The Uniform Declaratory Judgments Act is a remedial statute designed to "settle and
to afford relief from uncertainty and insecurity with respect to rights, status, and other legal
relations." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). Declaratory judgment is
appropriate only if a justiciable controversy exists as to the rights and status of the parties and the
controversy will be resolved by the declaration sought. Bonham State Bank v. Beadle, 907 S.W.2d
465, 467 (Tex. 1995) (citing Texas Ass'n of Bus., 852 S.W.2d at 446). Private parties may seek
declaratory relief against state officials who allegedly act without legal or statutory authority. Texas
Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). Such suits are not
"suits against the State," which would generally be barred by the doctrine of sovereign immunity,
but rather suits to compel state officers to act within their official capacity. Id. Thus, such
declaratory-judgment actions against state officials are not barred. Id.

 Chapter 441 of the Texas Government Code controls, among other things, the Texas
State Library and Archives Commission and the preservation of the state's public records. See Tex.
Gov't Code Ann. §§ 441.180-.203 (West 1998 & Supp. 2004). A "state record" is a "document,
book, paper, photograph, sound recording, or other material, regardless of physical form or
characteristic, made or received by a state department or institution according to law or in connection
with the transaction of official state business." Id. § 441.031 (West Supp. 2004). (9) A state record
may not be destroyed by a state agency "if any litigation, claim, negotiation, audit, open records
request, administrative review, or other action involving the record is initiated" before the record
would be legally eligible for destruction. Id. § 441.187(b) (West 1998).

 In this case, Burnam amended his petition on June 13 to add the claim that the
Department was acting outside of its statutory authority by destroying state records while not
complying with the requirements of section 441.187. (10) His open records request was pending at that
time. (11) Although that section does not provide an enforcement mechanism, (12) declaratory relief is
appropriate in order to compel the Department to act within the requirements of the statute. See IT-Davy, 74 S.W.3d at 855; see also Tex. Gov't Code Ann. §§ 441.180-.203. The court's jurisdiction,
then, originated in the allegation that the Department was not complying with its statutory duty. See
Texas Dep't of Pub. Safety v. Moore, 985 S.W.2d 149, 154 (Tex. App.--Austin 1998, no pet.). 
Because the request sought both to prevent the further destruction of documents and to establish a
violation of chapter 441 by a state official, the suit was not barred by sovereign immunity. (13)

 We now turn to the claim that this portion of the case was moot. The mootness
doctrine dictates that courts avoid rendering advisory opinions by only deciding cases that present
a "live" controversy at the time of the decision. Camarena v. Texas Employment Comm'n, 754
S.W.2d 149, 151 (Tex. 1988). A case becomes moot when: (i) it appears that one seeks to obtain
a judgment on some controversy, when in reality none exists; or (ii) when one seeks a judgment on
some matter which, when rendered for any reason, cannot have any practical legal effect on a
then-existing controversy. Texas Health Care Info. Council v. Seton Health Plan, Inc., 94 S.W.3d
841, 846-47 (Tex. App.--Austin 2002, no pet.). Cases may become moot when the allegedly
wrongful behavior has ended and could not be expected to recur. Securities & Exch. Comm'n v.
Medical Comm. for Human Rights, 404 U.S. 403, 406 (1972); see also Reyna v. City of Weslaco, 944
S.W.2d 657, 662 (Tex. App.--Corpus Christi 1997, no writ).

 We have already established that a controversy exists--whether the Department
destroyed documents in violation of chapter 441. Thus, we will now consider the Department's
argument that the case is moot. See Medical Comm. for Human Rights, 404 U.S. at 406. In this
case, Burnam supported his pleading with deposition testimony that the Department was destroying
documents. Although the Department maintains that it has turned over all relevant documents
currently in its possession, that assertion, if true, does not address whether it had destroyed any
documents in the first place. Thus, the substantive question at issue in this case would remain
unanswered. The Department also asserted that it never destroyed any documents. However, that
assertion is self-serving and remains an open fact question.

 In addition, whether the Department ceased the alleged document destruction when
the open-records request was made or even when the suit was filed does not answer the mootness
question. Although the action--the destruction of documents--constitutes a portion of the harm in
this case, the substance of the harm arises from the ongoing unavailability of the allegedly destroyed
documents. Thus, this case would be moot only when allegedly destroyed documents were identified
and reconstructed (14) rather than when document destruction ceased.

 Even if we focused only on the harm of the alleged act of the destruction of
documents rather than on its result, this case would not be moot under the "capable of repetition, yet
evading review" exception to the mootness doctrine. To invoke the exception, a plaintiff must prove
that: (1) the challenged action was too short in duration to be litigated fully before the action ceased
or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected
to the same action again. See Murphy v. Hunt, 455 U.S. 478, 482 (1982); Weinstein v. Bradford, 423
U.S. 147, 149 (1975); Williams v. Huff, 52 S.W.3d 171, 184 (Tex. 2001); Blum v. Lanier, 997
S.W.2d 259, 264 (Tex. 1999); General Land Office v. OXY U.S.A., Inc., 789 S.W.2d 569, 571 (Tex.
1990).

 As to the first prong, if a state agency were to destroy documents in violation of a
statute, that agency would always be able to cease the destruction before a party would be able to
fully litigate a challenge to its actions. In this case, Burnam requested documents on May 19 and
then filed suit on May 22. If the Department were destroying documents, it could have immediately
ceased doing so the very minute it received notice of the suit. Thus, Burnam would never have an
opportunity to fully litigate his claim. As to the second prong, if the Department were destroying
documents, it would be free to resume the destruction after receiving a ruling that the case was moot
but before fully responding to the open records request. The central issue in this case meets the 
standards of the "capable of repetition, yet evading review" exception to the mootness doctrine.

 We hold that the issues presented under chapter 441 are not moot and are not barred
by the doctrine of sovereign immunity. We sustain Burnam's issue on appeal.

The Department's Statutory Authority

 The Department raises two issues on appeal. First, it maintains that the district court
erred in its ruling that the Department does not have the statutory authority to arrest absent House
members on request of the speaker. Second, it argues that the court erred by ruling on the merits at
the same time that it denied the plea to the jurisdiction. Because the district court ruled on an issue
of statutory construction in a hearing on a plea to the jurisdiction, the Department asks us to consider
the relationship between the scheduling discretion of the trial court for a hearing on a plea to the
jurisdiction and the rights of parties to fair notice that they must argue the merits of their case. We
will begin with the Department's second issue.

 A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause
of action whether or not the claims asserted have merit. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 
547, 554 (Tex. 2000). The claims may form the context in which a dilatory plea is raised, but the
plea should be decided without delving into the merits of the case. Id. The purpose of a dilatory plea
is to establish a reason why the merits of the plaintiffs' claims should never be reached. Id. 

 A jurisdictional challenge may implicate the merits of the plaintiff's cause of action. 
See Texas Dep't of Parks & Wildlife v. Miranda, 47 Tex. Sup. Ct. J. 386, 390-93, 2004 Tex. LEXIS
304 (April 2, 2004). Nevertheless, parties in a case have the right to argue the merits of their case
at trial and do not have to put on their case simply to answer the jurisdictional question. See id.
(quoting Blue, 34 S.W.3d at 554). A court "exercises its discretion in deciding whether the
jurisdictional determination should be made at a preliminary hearing or await a fuller development
of the case, mindful that this determination must be made as soon as practicable." Id. at 391. For
example, if evidence relates to the subject-matter jurisdiction, the trial court should review that
evidence "to determine if a fact issue exists." Id. Only if the evidence is undisputed or fails to raise
a fact question on the jurisdictional issue should the court rule on that issue. Id. If evidence raises
a fact issue concerning the court's jurisdiction, it would be inappropriate for the court to grant a plea
to the jurisdiction. Id. at 391.

 A court has discretion on when to set a hearing on a plea to the jurisdiction. Id. at
392. However, that discretion should not interfere with a party's rights to have a hearing on the
merits. Id. It is a "fundamental precept that a court must not proceed on the merits of a case until
legitimate challenges to its jurisdiction have been decided." (15) Id. As a preliminary matter, service
of a pleading on another party must occur "not less than three days before the time specified for [a]
hearing." Tex. R. Civ. P. 21. Motions for summary judgment must be served at least twenty-one
days before the time specified for hearing. See Tex. R. Civ. P. 166a(c). The court then can only
consider issues expressly presented in the written motion, answer, or other response. Id. When a
case is set for a contested-case trial, the court must give reasonable notice of no less than forty-five
days. Tex. R. Civ. P. 245.

 In this case, the district court set the case for a hearing on a plea to the jurisdiction. 
One day before the hearing, Burnam amended his petition to seek a declaration that the Department
was acting without statutory authority to arrest absent House members. Under the most lenient of
the notice standards that could apply in this case, the three-day rule, the court should not have ruled
on the merits of the question of the Department's statutory authority because of lack of adequate
notice.

 On appeal, Burnam argues that this issue was tried by consent and so the court was
proper in ruling on the merits. We have carefully reviewed the record and disagree. At the hearing,
the Department's jurisdictional argument on this issue was that its actions were conducted pursuant
to House Rule 5, claiming it to be a legislative remedy and outside the jurisdictional purview of the
courts. It also argued that Burnam's remedy for this issue lies not in a declaratory-judgment action
but in attempting to change the House Rule as a member of that legislative body.

 In response, Burnam only asserted that he had "a right, as a state representative, for
there to be a declaration whether or not this law enforcement agency can engage in this type of
conduct in the future, as well as declare whether or not their resources were used in violation of state
law." He then briefly indicated to the court the statutes on which he was relying. He did not attempt
to reconcile those statutes with the House Rule.

 Neither party presented argument on the merits of the issue. Instead, all arguments
were made in jurisdictional terms. In addition, argument on any aspect of the Department's statutory
authority was so brief as to constitute a small minority of the time of the hearing. We cannot
reasonably conclude that either party intended to try the merits of this issue at that hearing. Because
the trial court improperly ruled on the merits of whether the Department has authority to arrest absent
House members, we sustain the Department's second issue. (16)

CONCLUSION


 We sustain Burnam's issue and hold his claim that the Department destroyed
documents in violation of chapter 441 of the government code is not barred by sovereign immunity
and is not moot. See Tex. Gov't Code Ann. §§ 441.185, .187. Thus, we reverse the judgment of the
district court granting the plea to the jurisdiction on that issue and remand for further proceedings. 
We sustain the Department's second issue and hold that the district court should not have ruled on
the underlying merits of the Department's statutory authority when it denied the plea to the
jurisdiction. As a result, we vacate the judgment of the district court that the Department lacked
statutory authority to arrest House members absent when a quorum is called and remand that issue
for further proceedings as well.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Kidd and Puryear

Reversed and Remanded in Part; Vacated and Remanded in Part

Filed: May 13, 2004

1. The Department of Public Safety also asks us to construe a statute regarding its power to
arrest. As we will explain below, we decline to address this issue at this time.
2. The Texas Constitution requires the presence of two-thirds of each house of the legislature
to constitute a quorum to do business. Tex. Const. art. III, § 10. A smaller number of members of
a house may compel the attendance of absent members of that house in such a manner and under
such penalties as that house may provide. Id.
3. District 90 is located in the Fort Worth area. 
4. The House rules provide:


Motion For Call Of The House--It shall be in order to move a call of the house
at any time to secure and maintain a quorum for one of the following purposes:


(1) for the consideration of a specific bill, resolution, motion, or other measure;


(2) for the consideration of any designated class of bills; or


(3) for a definite period of time.


Motions for, and incidental to, a call of the house are not debatable.


Tex. H.R. Rule 5, § 7, 78th Leg., R.S., 2003 H.J. of Tex. 67, 68.


Securing A Quorum--When a call of the house is moved for one of the above
purposes and seconded by 15 members (of whom the speaker may be one) and
ordered by a majority vote, the main entrance to the hall and all other doors
leading out of the hall shall be locked and no member permitted to leave the
house without the written permission of the speaker. The names of members
present shall be recorded. All absentees for whom no sufficient excuse is made
may, by order of a majority of those present, be sent for and arrested, wherever
they may be found, by the sergeant-at-arms or an officer appointed by the
sergeant-at-arms for that purpose, and their attendance shall be secured and
retained. The house shall determine on what conditions they shall be discharged. 
Members who voluntarily appear shall, unless the house otherwise directs, be
immediately admitted to the hall of the house and shall report their names to the
clerk to be entered in the journal as present.


 Until a quorum appears, should the roll call fail to show one present, no
business shall be transacted, except to compel the attendance of absent members
or to adjourn. It shall not be in order to recess under a call of the house.


Id. § 8, 78th Leg., R.S., 2003 H.J. of Tex. 67, 68-69.
5. The court granted a temporary restraining order on May 22.
6. See Tex. Gov't Code Ann. § 411.002(a) (West Supp. 2004) (The Department "is an agency
of the state to enforce the laws protecting the public safety and provide for the prevention and
detection of crime."); id. § 411.022 (West 1998) (Texas Rangers are governed by law defining
powers and duties of sheriffs); id. § 411.032 (members of Texas Highway Patrol have powers and
authority of Texas Rangers); see also Tex. Loc. Gov't Code Ann. § 85.022 (West 1999) (sheriffs to
execute process issued by Speaker of House).
7. See Texas Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.
2002); Texas Dep't of Pub. Safety v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).
8. The district court decided that the authority of the Department to arrest missing House
members is one of the statutory authority of the Department, not a political question.
9. Sections 441.001 through 441.016 set out the structure and general powers and duties of
the commission. Sections 441.031 through 441.039 govern the retention of public records.
10. No party argues that the district court abused its discretion in holding a hearing on the plea
to the jurisdiction on June 13. See Texas Dep't of Parks & Wildlife v. Miranda, 47 Tex. Sup. Ct. J.
386, 392, 2004 Tex. LEXIS 304 (April 2, 2004).
11. The Department claims to have handed over all documents at the hearing on June 13. 
Because that fact has not been established by a fact finder, the Department's facial assertion on its
own is not evidence that Burnam's open records request was not still pending.
12. The penal code provides for criminal penalties for destruction of a government record. 
See Tex. Pen. Code Ann. § 37.10(a)(3) (West Supp. 2004). Legally authorized record destruction
is exempt from criminal sanction. See id. § 37.10(b). Burnam is not seeking to impose criminal
sanctions under the penal code but to compel department performance with chapter 441.
13. The Department offers two additional arguments to support the ruling of the district court. 
First, it asserts that Burnam's claim is procedurally premature because he brought this suit within
ten days of filing his open records request and that the proper remedy for a violation of open-records
procedures is by writ of mandamus. See Tex. Gov't Code Ann. §§ 552.221, .321, .3215 (West Supp.
2004); see also Dominguez v. Gilbert, 48 S.W.3d 789, 796 (Tex. App.--Austin 2001, no pet.)
(reserving judgment on availability of declaratory judgment for section 552.3215 claims). Second,
it points out that the open records act provides for criminal penalties for the destruction of
documents. See id. § 552.351 (West Supp. 2004). Thus, it argues that only a criminal prosecutor
has authority to pursue a claim that a state agency has destroyed documents. See Sheppard v. Alaniz,
303 S.W.2d 846, 849 (Tex. Civ. App.--San Antonio 1957, no writ). Because we decide that a
declaratory-judgment action is appropriate under chapter 441 of the government code, we need not
consider the remedies available under chapter 552. We emphasize, however, that we are not
considering the merits of Burnam's claim. Instead, we are deciding only that Burnham satisfied the
jurisdictional hurdle for the district court to consider the merits under chapter 441. See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000).
14. This fact, if disputed, would directly concern the merits of the claim, and it would thus be
inappropriate for the district court to determine this issue in a plea to the jurisdiction. See Miranda,
47 Tex. Sup. Ct. J. at 392.
15. Although Miranda concerned the rights of a plaintiff, we discern no reason why a
defendant would not have similar rights when a court denies its plea to the jurisdiction.
16. We note that as a rule a party may not raise an issue for the first time on appeal. Dreyer
v. Greene, 871 S.W.2d 697, 698 (Tex. 1993). It would be inappropriate for us to consider this case
on the merits when the Department has not had the opportunity to develop its arguments and present
them to the district court. As a result, we will not address the Department's first issue at this time. 
Instead, we must wait until the parties have had an opportunity to present those arguments to the
district court.