# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**44444444444444**
**NO. 03-03-00478-CV**
**44444444444444**

**Bonnie Wagoner and Morgana Morgan, on behalf of themselves
and others similarly situated, Appellants**

**v.**

**Rainbow Group, Ltd. and Alan Sager,[1] Appellees**

**4444444444444444444444444444444444444444444444444444444444444444**
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT**
**NO. 92-02221A, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**
**4444444444444444444444444444444444444444444444444444444444444444**

## M E M O R A N D U M   O P I N I O N

In this case, we must consider, in light of our opinion in *Rainbow Group, Ltd. v. Johnson*, No. 03-00-00559-CV, 2002 Tex. App. LEXIS 6359 (Tex. App.—Austin Aug. 30, 2002, pet. denied) (not designated for publication), the effect of a judgment severing the individual claims from the class claims of hairstylists employed by Supercuts who did not testify at the initial trial. In that case, we affirmed both an award of damages against Supercuts *in quantum meruit* and a denial of a breach-of-contact claim against Supercuts only as to testifying class members. The

---

[1] Appellees Rainbow Group, Ltd., and Alan Sager collectively own and operate Supercuts hair salons in several Texas cities. Because both parties refer to them collectively as "Supercuts," and because their interests do not diverge in this case, we will also refer to them as such throughout this opinion.

district court in its final judgment in that case severed the cause of action of all non-testifying plaintiffs and retained jurisdiction over their case under a new cause number. Then, the district court granted Supercuts' plea to the jurisdiction in that severed case, deciding that the class plaintiffs presented no judiciable cause. For the reasons stated below, we reverse the district court's grant of the plea to the jurisdiction and remand for further proceedings.

## BACKGROUND

This is the third appeal related to a damages suit against Supercuts. In *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351 (Tex. App.—Austin 1999, pet. dism'd w.o.j.) (*Rainbow Group I*), we affirmed the district court's order certifying the class in this case. Then, in *Rainbow Group, Ltd. v. Johnson*, No. 03-00-00559-CV, 2002 Tex. App. LEXIS 6359 (Tex. App.—Austin Aug. 30, 2002, pet. denied) (not designated for publication) (*Rainbow Group II*), we affirmed both the trial court's award of damages *in quantum meruit* and its denial of a breach-of-contract claim as to the claims of testifying class members. To understand the issues in the case before us now, we begin with a summary of the facts and procedural background before we discuss the events that have occurred since we decided *Rainbow Group II*.

### *Background Information of* **Rainbow Group I** *and* **Rainbow Group II**

In 1991, certain hairstylists filed suit against their employer Supercuts in federal court for unpaid and overtime wages, complaining that they were not paid the federal minimum wage under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.A. §§ 201-219 (West 1988), for all hours of work they performed. Subsequently, the hairstylists voluntarily dismissed the case.

2

In 1992, hairstylist Josephine Johnson and others filed suit in state district court on behalf of themselves and all other individuals employed by Supercuts as hairstylists during the previous four years. The hairstylists requested certification as a class and alleged that they had entered into oral employment contracts with Supercuts providing payment at a fixed hourly rate, and that Supercuts had breached the contracts by refusing to pay the stylists for time spent at the hair salons "off the clock" and attending mandatory meetings. The district court granted the hairstylists' motion for class certification, which Supercuts appealed. The hairstylists subsequently filed an amended petition alleging claims incorporating FLSA, complaining that they were not paid the federal minimum wage for all hours during which they were required to be at work. On the basis of their amended petition, Supercuts removed the case to federal district court. The hairstylists filed a motion to remand, which was denied.

The federal district court conducted a bench trial on the merits and found that the hairstylists failed to establish that Supercuts breached employment contracts with the hairstylists. The hairstylists appealed both that finding and the denial of their motion to remand to the Fifth Circuit. The Fifth Circuit determined that the federal district court lacked subject-matter jurisdiction because the hairstylists had pleaded an independent state contract claim. It thus vacated the federal district court's judgment and remanded the case to that court with instructions to remand the case to state district court. *See Casey v. Rainbow Group, Ltd.*, 109 F.3d 765 (5th Cir. 1997) (opinion not published). After remand to state court, Supercuts resumed its appeal of the district court's certification of the class. We affirmed the certification in *Rainbow Group I*. Then, in a bifurcation order agreed on by all parties, the district court agreed to first decide the "liability issues common

3

to the class, if any, and the individual liability issues and the damages issues if any of those class members who testify live or by deposition." It also announced that it would determine the "individual liability issues, if any, and the amount of damages, if any, suffered by the non-testifying class members" at subsequent proceedings. It ordered that testimony introduced at any hearing could be used at any subsequent hearing.

The hairstylists then filed a second amended petition, adding a *quantum meruit* claim. The district court conducted a bench trial on the merits and found that it was Supercuts' policy that hairstylists were entitled to clock-in at the beginning of their shifts and upon returning from lunch, and they had a right to be compensated for those hours. Despite that policy, the district court also found that many store managers directed hairstylists not to clock-in at those times when there were not enough customers in the store. The court found that Supercuts received a benefit from this system and threatened hairstylists with discipline or loss of employment if they were not present in the stores during their scheduled work hours. It concluded that the hairstylists were not off the clock voluntarily and that they expected to be paid for the time spent waiting for costumers and attending mandatory meetings.

The trial court consequently rendered judgment for the thirteen hairstylists who testified, concluding that "plaintiffs have established all of the requirements for recovery in quantum meruit for the time they sat off the clock and attended mandatory shop and product knowledge meetings." It also limited the scope of its judgment to the issue of Supercuts' liability to the thirteen plaintiffs for whom the court made individual awards *in quantum meruit*. It further declared that the "claims of the remaining class members and any fees or costs incurred as a result of the prosecution

4

of those claims are hereby severed from the claims of the above named [p]laintiffs." The district court then reserved jurisdiction over the severed claims and assigned them a new cause number.

The appeal of that judgment was *Rainbow Group II*, and, among the ten issues presented, this Court affirmed both the district court's judgment denying the hairstylists' breach-of-contract claim and its award of damages *in quantum meruit*.[2]

### *Events since* **Rainbow Group II**

After we announced our decision in *Rainbow Group II*, the case proceeded on the class claims of the hairstylists who did not testify during the trial in that case on the last pleading filed in that case. That pleading claimed both breach-of-contract and *quantum meruit* damages. The hairstylists first moved to amend the class certification order in two ways. Because the named plaintiffs in the original cause had received individual relief in *Rainbow Group II*, the remaining hairstylists requested the court to substitute Wagoner and Morgan as named plaintiffs in the severed cause. In addition, they moved to reform the class-certification order to include the *quantum meruit* claim as it existed in the pleading.

Supercuts responded by first filing a plea to the jurisdiction, in which it asserted that the trial court "denied relief to the class and awarded relief to the individuals who presented *quantum meruit* claims at trial. Although no class claims survived the trial, the trial court 'severed' the claims of 'remaining class members.'" It then stated that, after our decision in *Rainbow Group II*, it paid

---

[2] Because the issue on appeal in the case before us now concerns the effect of this Court's opinion on the severed class action, we will discuss the holding of *Rainbow Group II* in more detail when we consider appellants' argument in this case.

5

the judgment to those plaintiffs who prevailed "on their individual *quantum meruit* claims." It concluded by arguing that the only class claims in the original cause were for breach of contract, and, those class claims having been denied in *Rainbow Group II*, the severed cause of action was an "empty case" that could not be amended.

The hairstylists amended the petition, substituting Wagoner and Morgan as named plaintiffs for the severed cause. Supercuts then filed a response to the remaining hairstylists' request to amend the class certification. It argued again that the trial court lacked jurisdiction in the severed cause of action. It also argued that a class action was an inappropriate vehicle for *quantum meruit* claims, that the statute of limitations had run, and that the doctrine of laches barred the continuing cause.[3] The district court granted Supercuts' plea to the jurisdiction, finding a lack of justiciable cause. This appeal followed.

**DISCUSSION**

On appeal, the hairstylists present one issue—that the district court erred in granting Supercuts' plea to the jurisdiction. We agree.

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Texas State Employees*

---

[3] Supercuts also argued that a class action was not the appropriate method for adjudicating the *quantum meruit* claims in this case. The trial court did not rule on that issue, and it is not presented before us on appeal.

6

*Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.*

Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo*. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations as true. *Texas Ass'n of Bus.*, 852 S.W.2d at 443. When considering evidence in the record in reviewing the plea to the jurisdiction, we take as true all evidence favorable to the nonmovant. *Miranda*, 133 S.W.3d at 228. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

If a judgment is unambiguous, our duty is to declare its effect in light of the literal meaning of the language employed. *Adams v. Adams*, 214 S.W.2d 856, 857 (Tex. Civ. App.—Waco 1948, writ ref'd n.r.e.). A judgment should be construed as a whole toward the end of harmonizing and giving effect to all the court has written. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976). The entire content of the written instrument and the record should be considered. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 405 (Tex. 1971). An interlocutory order is not a final judgment; its terms are appealable only to the extent that they are merged into the final judgment. *See Webb v. Jorns*, 488

7

S.W.2d 407, 409 (Tex. 1972) (interlocutory judgment did not become final judgment until merged into final judgment).

Questions of law decided on appeal will govern the case throughout its subsequent stages. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). By narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. *Id*. The doctrine is based on public policy and is aimed at putting an end to litigation. *Id*. (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). A decision rendered on an issue before us does not absolutely bar re-consideration of the same issue on a second appeal. *Id*. (citing *Kempner v. Huddleston*, 37 S.W. 1066, 1066 (Tex. 1896)). Rather, application of the doctrine lies within the discretion of the court, depending on the particular circumstances surrounding that case. *Id*. (citing *Kempner*, 37 S.W. at 1067). If our original decision is clearly erroneous, we are not required to adhere to its original rulings. *Id*. (citing *Galveston, Harrisburg & San Antonio Ry. v. Faber*, 8 S.W. 64, 65 (Tex. 1888)).

We now turn to the proceedings that led up to *Rainbow Group II* and our decision in that case to determine what claims the trial court resolved when it entered its judgment in that case. When the trial court bifurcated the trial proceedings, it decided that it would first consider the "liability issues common to the class, if any, and the individual liability issues and the damages issues if any of those class members who testify live or by deposition." At subsequent proceedings, it would determine the "individual liability issues, if any, and the amount of damages, if any, suffered by the non-testifying class members."

8

In this case, however, the cause continued through trial, resulting in a judgment.  In its final judgment, the trial court granted the thirteen hairstylists pre-judgment interest and attorney's fees and limited the scope of its judgment to the issue of Supercuts' liability to the thirteen plaintiffs for whom the court made individual awards *in quantum meruit*.  It further declared that the "claims of the remaining class members and any fees or costs incurred as a result of the prosecution of those claims are hereby severed from the claims of the above named [p]laintiffs."

On appeal in *Rainbow Group II*, Supercuts argued in its first issue that the trial court erred by granting relief *in quantum meruit* because those claims had not been properly certified as part of the class action.  Before finding that individual *quantum meruit* claims had been tried by consent, *see Rainbow Group II*, 2002 Tex. App. LEXIS 6359, at *7-11, we determined that the record did not reflect that the trial court adjudicated any *quantum meruit* class claims.  *See id*. at *7.  We considered both the agreed bifurcation order and the judgment in that case and concluded that the thirteen hairstylists "recovered only on their individual *quantum meruit* claims, and the court awarded each of the thirteen hairstylists only individual relief."  *Id*.  We noted that the judgment stated, "This judgment is entered on the issue of Defendants' liability to the above named Plaintiffs and Plaintiff class members only."  *Id*.  "Despite the extensive findings of fact, the trial court did not determine any class issues, and the judgment does not establish Supercuts' liability as to the *quantum meruit* claims of a class or any unnamed class members."  *Id*.

We have reviewed the record in *Rainbow Group II* and find our interpretation of that judgment to be correct.  In addition, nothing in the record now compels us to read that judgment in a different way.  Although Supercuts argues that the bifurcation order should control the proper

9

interpretation of what issues were resolved in *Rainbow Group II*, it was an interlocutory order, its terms were not appealable until the court entered a final judgment, and the judgment in *Rainbow Group II* was unambiguous—the district court entered judgment on the issue of Supercuts' liability only as to the individual plaintiffs who testified and only granted individual awards. It severed the claims of the non-testifying class members. We refuse to read the terms of an interlocutory order to contradict the unambiguous terms of a final judgment. Thus, we hold the class *quantum meruit* claims of the hairstylists have not been adjudicated but rather were severed from the judgment in *Rainbow Group II*.

In its brief, Supercuts asserts additional reasons to affirm the district court's granting of its plea to the jurisdiction. First, it argues that the hairstylists failed to timely amend the class certification before the district court entered the final judgment in *Rainbow Group II*. *See* Tex. R. Civ. P. 42(c)(1)(C) (class certification order "may be altered or amended before final judgment"). Because we have determined that no final judgment has been entered on the hairstylists' class claims, the class certification order may still be amended, and Supercuts' argument fails. Second, Supercuts asserts that the cause is time-barred by the statute of limitations and the doctrine of laches. It also argues the suit is barred by the doctrines of *res judicata* and acceptance of the benefits. These challenges to a cause of action are affirmative defenses. Tex. R. Civ. P. 94; *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001) (statute of limitations); *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964) (laches); *Tex. Dep't of Mental Health & Mental Retardation v. Olofsson*, 59 S.W.3d 831, 833 (Tex. App.—Austin 2001, pet. dism'd) (*res judicata*); *see also Lopez v. Munoz, Hockema & Reed*, 22 S.W.3d 857, 863 (Tex. 2000) (acceptance of benefits is affirmative defense);

10

*Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950) (acceptance of benefits is based on principle of estoppel). Affirmative defenses are not jurisdictional issues and may not be used to support a plea to the jurisdiction. *Olofsson*, 59 S.W.3d at 833. Because this case comes to us on a grant of a plea to the jurisdiction, we need not consider the merits of the affirmative defenses offered by Supercuts.

Because we have found that the pleadings in this case continue to present a judiciable cause and because we reject Supercuts' additional arguments, we sustain the hairstylists' issue on appeal.

## CONCLUSION

We hold the class *quantum meruit* claims of the non-testifying hairstylists were not adjudicated in *Rainbow Group II* but rather were severed from the judgment in that case. We also reject Supercuts' proffered additional arguments to support the district court's grant of the plea to the jurisdiction. Thus, we reverse the grant of the plea to the jurisdiction and remand this cause for further proceedings consistent with this opinion.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded

Filed: July 29, 2004

11